EDWIN A. BURNETTE, the Public Defender of Cook County in His Official Capacity, *et al.*, Plaintiffs-Appellees, v. TODD H. STROGER, President, Cook County County Board of Commissioners, in His Official Capacity, Defendant-Appellant.

First District (1st Division)   No. 1—08—2908

Opinion filed March 30, 2009.

Odelson & Sterk, Ltd., of Evergreen Park (Robert Wilder, Burton S. Odelson, and Michael J. McGrath, of counsel), for appellant.

Holland & Knight, LLP, of Chicago (Victor P. Henderson and Christopher W. Carmichael, of counsel), for appellees.

PRESIDING JUSTICE ROBERT E. GORDON delivered the opinion of the court:

In March 2007, the Cook County board of commissioners approved a budget amendment that included laying off personnel in the office of the Cook County public defender. The term "layoff" is used because the possibility of return was left open. The amendment listed only the types of positions to be reduced. Plaintiffs allege that 34 assistants and other employees were selected for termination with the "advice and approval" of defendant Todd E. Stroger, the president of the Cook County board of commissioners (the president), and without consulting Edwin A. Burnette, the Cook County public defender (the public defender). In addition, in April 2007, the president directed designated personnel in the public defender's office to take unpaid "furlough" days.

On November 16, 2007, plaintiffs Edwin A. Burnette, the public defender of Cook County, and the office of the Cook County public defender filed this suit against the president, contesting both the president's selection of personnel to be laid off and his imposition of furlough days. The Public Defender Act[1] provides that the county board has the right to fix the compensation and number of the assistant public defenders and their staff; and that the public defender has the right, within the numbers fixed by the county board, to hire and fire individuals to serve as assistant public defenders and staff members. 55 ILCS 5/3—4008.1 (West 2006). The Act provides that the assistant public defenders "serve at the pleasure of the Public Defender." 55 ILCS 5/3—4008.1 (West 2006).

In response to the public defender's complaint, the president

---

[1]Sections 3—4000 through 3—4011 of the Counties Code is commonly called the Public Defender Act (hereinafter, the Act) (55 ILCS 5/3—4000 through 3—4011 (West 2006)).

moved to dismiss, claiming that the public defender did not have standing to bring this suit and that the president acted within his authority. On May 20, 2008, the circuit court of Cook County denied the president's motion in part, and granted it in part.

On October 14, 2008, the trial court certified four questions for interlocutory review by this court. The questions concerned the public defender's standing to bring this suit and the scope of the president's authority.

## BACKGROUND

On August 17, 2007, Richard Devine, the State's Attorney of Cook County, filed a petition with the trial court seeking appointment of a special State's Attorney to represent the public defender. The petition stated: "The Public Defender of Cook County, Edwin A. Burnette, is currently involved in administration issues for his office following receipt of various directives from the Office of the President of the Cook County Board which require the analysis, interpretation, and advice of legal counsel." The petition stated that the public defender had asked the State's Attorney for the appointment of a special State's Attorney, and the State's Attorney agreed. On August 27, 2007, the trial court granted the petition and appointed a special State's Attorney to represent the public defender in this matter.

On November 16, 2007, plaintiffs filed a four-count complaint. The first count concerned the layoff of 34 employees; the second and third counts concerned the furlough days; and the fourth count sought declaratory relief to establish the public defender's appointment authority. The original defendants were: Todd H. Stroger, president of the Cook County board of commissioners; Lance Christopher Tyson, chief of staff of the Cook County board of commissioners; Jonathan A. Rothstein, acting chief of human resources of Cook County; and Joseph M. Fratto, the comptroller of Cook County. Other than the president, the other defendants were dismissed without prejudice in an agreed order in the trial court on January 28, 2008.

The first count sought the reinstatement and reimbursement of the 34 laid-off employees, as well as injunctive relief barring defendants from taking retaliatory action for the filing of this complaint and barring defendants from making further layoffs or terminations "without the independent decision" of the public defender. The count alleged that the termination letters, dated between March 29, 2007, and April 11, 2007, affected "approximately 17 attorneys and approximately 17 support staff members, all of whom were considered to be performing their duties adequately to exceptionally at the time of their termination."

The second count sought: the end of furlough days; restitution for any employee who had already taken them; and prevention of retaliation for failing to comply with the furlough-day directives. The count alleged that on April 5, 2007, the president issued a memorandum to the public defender, as well as to all other Cook County bureau chiefs and department heads, entitled "Reduced Work Schedule Days." The April 5 memorandum required designated members of the public defender's office to take a certain number of unpaid furlough days by the end of the fiscal year. On July 11, 2007, the public defender issued a memorandum to his office to cease taking furlough days. A memorandum dated August 23, 2007, from the president reduced the mandatory furlough days from 10 to 5 days and threatened disciplinary action against anyone who failed to comply.

Count III sought full compensation for assistant public defender supervisors, as fixed by the county board; reimbursement for supervisors who had taken furlough days; and a declaration that defendants could not reduce the compensation of supervisors, below the amounts fixed by the county board, through furlough days or any other means. The count alleged that, on February 23, 2007, the county board passed an annual appropriations bill for fiscal year 2007, which fixed the number and compensation of assistant public defender supervisors.

Count IV sought a declaration that the public defender had "exclusive power to appoint assistants and other employees/staff"; that defendants must "honor the independence" of the public defender; and that defendant may not take "unilateral employment related actions."

In November 2007, petitions to intervene were filed by the American Federation of State, County and Municipal Employees, Council 31, as the bargaining representative for assistant public defenders, investigators and support staff; and Laura B. Simon, the public defender's chief of staff. On July 24, 2008, the trial court entered an order staying the petitions to intervene, pending the outcome of the interlocutory review of the four certified questions.

On January 10, 2008, defendants moved to dismiss the complaint, pursuant to section 2—619 of the Code of Civil Procedure. 735 ILCS 5/2—619 (West 2006). The motion sought dismissal of all counts on the grounds that: (1) "the public defender does not have the power to institute civil litigation"; and (2) "the complaint is void because the special [S]tate's [A]ttorney lacks authority to file this litigation." The motion also sought to dismiss: count I, because "the public defender lacks standing to assert the rights of laid-off or terminated employees"; counts II and III, because "the president of the county board has the power to delay, restrict, or terminate the expenditure of any appropria-

tion": and count IV, because "the court lacks the power to restrict the president of the board from controlling county expenditures."

On May 30, 2008, the circuit court of Cook County heard argument on two motions filed by the president: (1) a motion to restrict the appointment of the special State's Attorney to represent the public defender; and (2) the motion to dismiss, filed on January 10, 2008. Also present was an attorney representing the union and Laura Simon, both who were seeking to intervene.

During the argument on the president's motion to restrict, the special State's Attorney representing the defender noted that the president is also represented by a special State's Attorney. The trial court stated that it would not "restrict the special [S]tate's [A]ttorney's ability to maintain a cause of action on behalf of the public defender"; and thus the president's motion to restrict was denied.

Also on May 30, 2008, the trial court denied in part and granted in part the president's motion to dismiss. During argument on the dismissal motion, the president's attorney conceded, in essence, the standing of those seeking to intervene, when he stated: "Certainly those individuals who have potentially lost their positions or—have lost their positions, they have standing to bring a case." The president's attorney also asserted that if "the defendant indigents" had been harmed, "they are entitled to bring this case."

In a written order dated May 30, 2008, the trial court granted the motion to dismiss count I; denied the motion to dismiss counts II and IV; and denied the motion to dismiss count III but struck "plaintiff's request for additional relief." The order also gave defendant 28 days both (1) to respond to the petitions to intervene; and (2) "to file an answer or otherwise plead" to plaintiffs' complaint.

On June 3, 2007, the president moved to certify an interlocutory appeal, and the public defender opposed the motion. On October 14, 2008, the trial court certified the following four questions for appeal, pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308):

"1. Whether the Cook County Public Defender is an entity that can sue or be sued;

2. Whether or not the Cook County Public Defender has standing to assert claims to prevent interference with his statutory authority under 55 ILCS 5/3—4000 et seq., and whether the Public Defender may assert the rights of Cook County employees who were required to take furlough days during the year 2007 or the indigent accused;

3. Whether or not the President of the Cook County Board has the authority to alter or terminate the existing appropriations for the Cook County Public Defender after the fiscal year appropria-

tions' budget has been passed by the Cook County Board by means of unpaid furlough; or whether the President may not alter existing appropriations for the Cook County Public Defender, pursuant to 55 ILCS 5/6—24001, 5/3—4006.1, and 5/3—4008.1.

4. Whether or not the President of the Cook County Board of Commissioners has the authority to hire, terminate, replace, discipline, or direct the assignments of any assistant public defender, clerk or employee of the Cook County Public Defender, or whether the Public Defender is vested with that sole authority, pursuant to 55 ILCS 5/3—4008.1."

On October 24, 2008, the public defender petitioned this court for leave to appeal pursuant to Supreme Court Rule 308. 155 Ill. 2d R. 308. On December 1, 2008, this court granted the petition, and this appeal followed.

On December 2, 2008, the public defender moved the trial court for leave to file an amended complaint. The proposed amended complaint contained only two counts: count I, for injunctive relief; and count II, for declaratory relief. Count I asked this court to "permanently enjoin" the president "(1) from hiring, terminating, laying-off, or otherwise making specific personnel decisions" within the public defender's office; and "(2) from directing, assigning or managing any of the personnel or affairs" of the public defender's office. Count II asked this court to declare that (1) the public defender had the sole authority to manage his office and make personnel decisions for it; and that (2) the president is not permitted to alter the appropriations for the public defender's office or to reduce the salaries of the public defender's staff that were fixed by the county board.

On December 29, 2008, the president moved to stay the proceedings in the trial court. On January 14, 2009, the trial court ordered that action on plaintiff's motion to file an amended complaint was stayed pending the outcome of this appeal. The record on appeal was first filed on March 11, 2009; and oral arguments were held on March 18, 2009.

## ANALYSIS

### Standard of Review

In the case at bar, our standard of review is *de novo*. The certified questions require us to interpret sections of the Public Defender Act (55 ILCS 5/3—4000 *et seq.* (West 2006)) and other provisions of the Counties Code (55 ILCS 5/1—1001 *et seq.* (West 2006)). Questions of statutory interpretation are reviewed *de novo*. *People ex rel. Devine v. Sharkey*, 221 Ill. 2d 613, 617 (2006); see also *Burnette v. Terrell*, 232 Ill. 2d 522, 533 (2009) ("a dispute between two public officials over

the scope of the authority granted to each by constitution and statute" was reviewed *de novo*).

## Interlocutory Appeal

This appeal is an interlocutory appeal, permitted by Supreme Court Rule 308. 155 Ill. 2d R. 308. Supreme Court Rule 308(a) provides:

> "When the trial court, in making an interlocutory order not otherwise appealable, finds that the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the court shall so state in writing, identifying the question of law involved. Such a statement may be made at the time of the entry of the order or thereafter on the court's own motion or on motion of any party. The Appellate Court may thereupon in its discretion allow an appeal from the order." 155 Ill. 2d R. 308.

Supreme Court Rule 308, quoted above, permits this court "in its discretion to allow an appeal from the order," which in the case at bar was the dismissal order. We exercise the discretion given to us by Rule 308 and choose *not* to review the dismissal order for two reasons. First, the parties in their appellate briefs did not brief the propriety of the trial judge's order. Second, plaintiffs are seeking to amend their complaint to eliminate the parts that were dismissed by the trial court.

Pursuant to Supreme Court Rule 308, the trial court certified four questions for our review. In essence, we must decide: (1) whether the public defender is an entity capable of suit; (2) whether the public defender has standing; (3) whether the president had the authority to impose unpaid furlough days on designated members of the public defender's staff; and (4) whether the president had the authority to select whom to fire among the public defender's assistants and staff members. The first two questions concern the public defender's standing and capacity to bring this suit; the last two questions concern the scope of the president's authority over the public defender's staff.

### *Question No. 1: Defender's Capacity for Suit*

■ The first certified question asks:

> "1. Whether the Cook County Public Defender is an entity that can sue or be sued[.]"

Thus, we must decide whether the public defender is an entity capable of suit. As a preliminary matter, we note that the circuit court in the case at bar already acknowledged the public defender's capacity to sue, by appointing a special State's Attorney to represent the public defender. None of the certified questions contests the propriety of this order.

The president contends in this appeal that the public defender is not capable of suit, because there is no statute that explicitly states that the public defender is an entity that can sue or be sued.

First, the statutory scheme does contemplate that the public defender is an entity capable of suit. Statutes permit both indemnity and partial immunity for public defenders, thus presuming their capacity for suit. Indemnity is provided by a statute that requires the county to indemnify the public defender for "any judgement recovered against him" as the result of the performance of his duties. 55 ILCS 5/5—1003 (West 2006). Immunity is provided by the Public and Appellate Defender Immunity Act for professional malpractice, other than wilful and wanton misconduct. 745 ILCS 19/5 (West 2006). There would be little need for either indemnification or partial immunity if the defender could not be sued.

Second and more importantly, it would make no sense to create an entity that could not even defend its right to exist. For this reason, our supreme court has repeatedly permitted public defenders to sue in order to protect and define the scope of their statutory authority. For example, in *Maloney v. Bower*, 113 Ill. 2d 473 (1986), our supreme court permitted the public defender of Bureau County to file a complaint with the supreme court for a writ of prohibition. *Maloney*, 113 Ill. 2d at 476. The public defender had been ordered to represent an indigent defendant in a civil contempt proceeding. *Maloney*, 113 Ill. 2d at 476. The supreme court held that the chief judge exceeded his authority when he directed trial judges to start appointing public defenders in contempt cases. *Maloney*, 113 Ill. 2d at 478-79. Granting the writ, the supreme court found that the chief judge's directive went beyond the statutory responsibilities required of public defenders. *Maloney*, 113 Ill. 2d at 479. The court observed that public defender offices were already "overburdened and struggl[ing] to fulfill their statutory obligations." *Maloney*, 113 Ill. 2d at 479-80. Thus, the public defender was allowed to sue to prevent this "stick from breaking the camel's back." See also *Burnette v. Terrell*, 232 Ill. 2d 522, 525 (2009) (our supreme court granted the Cook County public defender leave to file a petition to protest a trial judge's interference with the assignment of an assistant public defender to the judge's courtroom); *Doherty v. Caisley*, 104 Ill. 2d 72 (1984) (our supreme court granted the Cook County public defender leave to file a complaint for writs of *mandamus* and prohibition to stop appointments in civil suits); *Kirwan v. Karns*, 119 Ill. 2d 431, 433 (1988) (our supreme court granted the state appellate defender leave to file a petition for a writ of *mandamus* to object to his appointment in a civil case); *Alexander v. Pearson*, 354 Ill. App. 3d 643, 647 (2004) (trial court had no authority to order the state appellate defender to represent a defendant in a *habeas corpus* petition).

In support of its argument that the public defender is not a suable entity, the president cites four federal cases, three of which are unreported decisions. Unreported decisions have no precedential value. Ill. S. Ct. R. 23 (eff. May 30, 2008) (unpublished order has no precedential value and "may not be cited"); *People v. Moore*, 243 Ill. App. 3d 583, 584 (1993) ("the decision was unreported and of no precedential value"). This is even more true for decisions from foreign jurisdictions. *West American Insurance Co. v. J.R. Construction Co.*, 334 Ill. App. 3d 75, 82 (2002) (a "foreign unreported decision" is of "no precedential value"); *Lyons v. Ryan*, 324 Ill. App. 3d 1094, 1107 n.11 (2001) ("unreported federal court orders" are not "any kind of authority before an Illinois court"); *Sompolski v. Miller*, 239 Ill. App. 3d 1087, 1093 (1993) ("we decline" to follow "an unreported Federal district court decision").

In addition, in one of the unreported decisions, *Woidtke v. County of St. Clair*, No. 02—CV—0225—DRH (S.D. Ill. November 8, 2002), the plaintiff did not dispute the issue; and the trial court accepted his concession. In another, *Rankins v. Winzeler*, No. 02 C 50507 (N.D. Ill. May 9, 2003), the trial court held only that the public defender's office was not a suable entity under 42 U.S.C. §1983.

In the one reported decision, *Clay v. Friedman*, 541 F. Supp. 500 (N.D. Ill. 1982), the federal district court held that the Cook County public defender, could be sued in his "individual and supervisory" capacity for decisions with respect to "[h]iring, firing and monitoring attorneys." *Clay*, 541 F. Supp. at 502-03. See also *Branti v. Finkel*, 445 U.S. 507, 508, 63 L. Ed. 2d 574, 577, 100 S. Ct. 1287, 1289 (1980) (assistant public defenders sued public defender to prevent their termination). This holding actually undermines the president's argument.

Thus, for the foregoing reasons, we find that the public defender has the capacity to sue to contest the president's selection of staff to lay off and his imposition of furlough days.

However, we cannot find any Illinois authority for the proposition that the office of the public defender—as separate and distinct from the public defender in his official capacity—has the capacity to sue. The president cites *Clay*, in which a federal district court held that the "Office of the Public Defender" was not an entity that could be sued separately from the public defender. *Clay*, 541 F. Supp. at 503. The public defender argues in its appellate brief that the public defender has the capacity to sue, but does not cite authority to support the proposition that the office has a separate and distinct capacity to sue. Thus, we find that the office of the public defender does not have a separate capacity to sue, apart from the public defender in his official capacity.

*Question No. 2: Defender's Standing*

■ The second certified question asks:

"2. Whether or not the Cook County Public Defender has standing to assert claims to prevent interference with his statutory authority under 55 ILCS 5/3—4000 *et seq.*, and whether the Public Defender may assert the rights of Cook County employees who were required to take furlough days during the year 2007 or the indigent accused[.]"

On appeal, the public defender has withdrawn his request for the relief described in part of the above question. The second question asks, in part: "whether the Public Defender may assert the rights of Cook County employees who were required to take furlough days during the year 2007 or the indigent accused." However, in its appellate brief, the public defender states:

"While the complaint contains requests for relief on behalf of employees and the indigent, that relief was stricken and it has been repeatedly stated by the Public Defender that such relief is not requested."

In light of the public defender's concession, we will not consider the second part of the second question. See 155 Ill. 2d R. 308(a) (purpose of an immediate, interlocutory appeal is solely to "materially advance the ultimate termination of the litigation").

With the second part eliminated, the second certified question now asks this court whether the public defender has "standing to assert claims to prevent interference with his statutory authority." Even though this question does not specify the president by name, we interpret the question as asking whether the public defender has standing to contest the specific acts of interference at issue in this lawsuit: namely, the president's selection of staff to lay off; and his imposition of furlough days on designated employees. See 155 Ill. 2d R. 308(a) (purpose of an immediate, interlocutory appeal is solely to "materially advance the ultimate termination of the litigation").

On the issue of standing, the president cites federal cases, and the public defender cites *Lynch v. Devine*, 45 Ill. App. 3d 743 (1977), and its progeny, such as *In re Estate of Burgeson*, 125 Ill. 2d 477 (1988), and *In re Marriage of Rodriguez*, 131 Ill. 2d 273 (1989). Both lines of cases were rejected by our supreme court, a decade ago, in *Glisson v. City of Marion*, 188 Ill. 2d 211 (1999). In *Glisson*, our supreme court stated both that "this court in *Greer* rejected federal principles on standing" and that "[w]e reject the *Lynch* test for the same reason." *Glisson*, 188 Ill. 2d at 221-22, discussing *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 491-92 (1988). Our supreme court could not have been more clear.

Not only does the president rely extensively on federal cases for this issue and for other issues throughout his brief, but a number of these cases are unreported decisions. As previously discussed above, unreported federal decisions have no precedential value.

The principles of standing in Illinois are well established. Under Illinois law, the defendant has the burden to both plead and prove the plaintiff's lack of standing. *Chicago Teachers Union v. Board of Education*, 189 Ill. 2d 200, 206 (2000). A plaintiff is not required to allege in his or her complaint the facts that establish his or her standing. *Chicago Teachers Union*, 189 Ill. 2d at 206.

Our standing doctrine is "intended to assure that issues are raised only by those parties with a real interest in the outcome of the controversy." *Chicago Teachers Union*, 189 Ill. 2d at 206, citing *Glisson*, 188 Ill. 2d at 221. For a plaintiff to have standing, his or her claimed injury must be: "(1) distinct and palpable; (2) fairly traceable to defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief." *Chicago Teachers Union*, 189 Ill. 2d at 207, citing *Glisson*, 188 Ill. 2d at 221.

In the case at bar, we are asked to consider two distinct injuries: (1) the president's unauthorized selection of which public defenders and staff to fire or lay off; and (2) his imposition of furlough days on designated employees.

The president's unauthorized selection of whom to lay off is an injury that satisfies all three of the requirements for standing. First, it is a distinct and palpable injury to the public defender's statutory authority to "appoint" assistant defenders to serve at his "pleasure." 55 ILCS 5/3—4008.1 (West 2006); *Burnette v. Terrell*, 232 Ill. 2d 522, 540 (2009) (public defender has "statutory authority" to "hire and manage his staff"). In addition, the public defender has a statutory duty to render effective representation to the indigent defendants of Cook County. 55 ILCS 5/3—4000, 3—4006 (West 2006). If he is unable to select whom to lay off and whom to retain, this interference with his ability to direct the affairs of his own office is a distinct and palpable injury to his ability to carry out his statutorily appointed duty of effective representation. Second, the injury is directly traceable to the president's alleged action in usurping the public defender's statutorily assigned power to select whom to fire or lay off. *Burnette v. Terrell*, 232 Ill. 2d 522, 540 (2009) (trial judge's assignment of specific cases to specific assistant public defenders "usurp[ed] the statutory authority of the public defender to hire and manage his staff"). Third, the requested relief, namely a declaration by this court, will redress the problem by restoring to the public defender his statutory right to select whom to lay off when the county board exercises its statutory

authority to cut the number of his assistants. *Burnette v. Terrell*, 232 Ill. 2d 522, 545 (2009) (granting declaratory relief to prevent future interference by a trial judge with the public defender's authority to hire and manage his staff).

The president's imposition of furlough days on designated employees is also an injury that confers standing. First, it is a distinct and palpable injury to the public defender's ability to carry out his statutorily appointed duty of effective representation. Furlough days reduce both the compensation of assistants, as well as the number of assistants available to work on any given day. Reduction in the compensation and number of assistants undoubtedly reduces the public defender's ability to provide effective representation to indigents, as the statute requires. 55 ILCS 5/3—4000, 3—4006 (West 2006). Second, the injury is directly traceable to the president's action in imposing the furlough days. Third, the requested relief, namely a declaration by this court, will redress the problem by preventing unauthorized reductions in the public defender's daily available workforce and their compensation. *Burnette v. Terrell*, 232 Ill. 2d 522, 545 (2009) (granting declaratory relief to prevent future interference by a trial judge with the public defender's authority to hire and manage his staff).

Thus, the public defender has standing to contest both the selection of whom to fire and the imposition of furlough days on designated employees. In addition, we note that the petitions of those seeking to intervene are stayed, pending our ruling on these questions; and the president has not disputed their standing to contest terminations or furlough days.

### *Question No. 3: President's Authority to Impose Furlough Days*

■ The third certified question asks:

"3. Whether or not the President of the Cook County Board has the authority to alter or terminate the existing appropriations for the Cook County Public Defender after the fiscal year appropriations' budget has been passed by the Cook County Board by means of unpaid furlough; or whether the President may not alter existing appropriations for the Cook County Public Defender, pursuant to 55 ILCS 5/6—24001, 5/3—4006.1, and 5/3—4008.1."

The third certified question is overly broad. The complaint alleges that the president imposed furlough days on "designated members of the Defenders [*sic*] office." We will interpret this question to ask only whether the president had the authority to impose furlough days on designated employees. See 155 Ill. 2d R. 308(a) (purpose of an immediate, interlocutory appeal is solely to "materially advance the ultimate termination of the litigation").

Both the third and fourth certified questions ask us to define the scope of the president's power: specifically, whether he had the power to make layoff selections and to impose furlough days on designated employees. Power over the public defender's staff is divided between the county board and the public defender. 55 ILCS 5/3—4008.1 (West 2006). The county board has the right to fix the number and compensation of the assistant public defenders and their staff, while the public defender has the right, within that fixed number, to hire and fire individuals to serve as assistant public defenders and staff members. 55 ILCS 5/3—4008.1 (West 2006). Specifically, the Public Defender Act provides the public defender with the right to "appoint" attorneys to serve as assistant public defenders, who then "serve at the pleasure of the Public Defender." 55 ILCS 5/3—4008.1 (West 2006); *Burnette v. Terrell*, 232 Ill. 2d 522, 540 (2009) (statute provides public defender with the sole authority to hire and manage his staff); *Doherty v. Caisley*, 104 Ill. 2d 72, 79 (1984) (statute shows legislative intent "to establish autonomous public-defender positions").

Section 3—4008.1 of the Act governs the hiring, firing, and compensation of assistant public defenders, and it provides in full:

"Assistants in counties over 1,000,000. The Public Defender in counties with a population over 1,000,000 shall appoint assistants, all duly licensed practitioners, as the Public Defender shall deem necessary for the proper discharge of the duties of the office, who shall serve at the pleasure of the Public Defender. The Public Defender shall also, in like manner, appoint clerks and other employees necessary for the transaction of the business of the office. The compensation of and the appropriate number of assistants, clerks, and employees shall be fixed by the County Board and paid out of the county treasury." 55 ILCS 5/3—4008.1 (West 2006).

The statute, quoted above, does not provide the president of the county board with authority over the public defender's staff. *Burnette v. Terrell*, 232 Ill. 2d 522, 540 (2009) (statute provides public defender with the sole authority to hire and manage his staff). As noted above, the power to hire, fire, fix the number of, or set the compensation of assistant public defenders is divided solely between the board and the public defender.

With respect to the furlough/compensation issue in Question No. 3, the president makes only one argument: that section 6—24007 of the Counties Code (55 ILCS 5/6—24007) (West 2006)) gives the power to restrict the compensation of assistant public defenders to *either him or the county board* but not to the public defender. The president makes no arguments that this power belongs to him, as opposed to the county board, almost conceding the third certified question, that he lacked the authority to impose furlough days on designated employees.

Section 6—24007 provides in relevant part:

> *"For purposes of controlling expenditures, the expenditure of or incurring of obligations against any appropriation may be delayed, restricted, or terminated with regard to any object or purpose for which appropriations were made in the appropriation bill or resolution.* A monthly schedule for the year of proposed expenditure, including any limitations or conditions against appropriations for each program, subactivity, and the agency or department, shall be made within 30 days of the adoption of the annual appropriation bill, and such schedule, as amended by the President of the County Board, shall be binding upon all officers, agencies, and departments, and such schedule of expenditure or of incurring obligations may not be exceeded, provided that any such schedule may be revised after three calendar months have elapsed since the last schedule." (Emphasis added.) 55 ILCS 5/6—24007 (West 2006).

The president's appellate brief argues that although the first line quoted and emphasized above is "not a model of clarity," it "appears to grant either the President or the Board with essentially unfettered authority to restrict or terminate any appropriation for any reason." The president claims that this provision "does not clearly specify the appropriate mechanism by which an appropriation may be restricted or terminated."

In response, the public defender argues, first, that the provision *does* specify a mechanism, in the sentence that immediately follows, namely, the monthly schedule. The statute quoted above requires the monthly schedule to be "made within 30 days of the adoption of the annual appropriation bill." 55 ILCS 5/6—24007 (West 2006). Since the president's furlough action occurred outside the 30-day window provided by statute, this action was invalid under the statute, even if the first sentence was interpreted to give him the power to restrict compensation.

Second and more importantly, even if the first sentence gave the president, as opposed to the county board, the general power to restrict appropriations, another section of the Code specifically gave budgeting power over the public defender's office solely to the county board. As previously discussed, the Counties Code gave to the county board, alone, the power to "fix[ ]" the number of and compensation of assistant defenders and other staff members. 55 ILCS 5/3—4008.1 (West 2006). Words in a statute are given their "plain and ordinary meaning." *Devine*, 221 Ill. 2d at 617. Webster's defines the word "fix" as "**a :** to make firm, stable, or stationary" and "**b :** to give a permanent or final form to." Webster's Tenth New Collegiate Dictionary 440 (1998). It would not make sense for one section of the Counties Code

to specify that the county board could "make firm" the compensation of assistant defenders, and then to interpret another section as allowing the president to override that right entirely. Statutes must be construed "as a whole." *Devine*, 221 Ill. 2d at 617. Thus, we find that section 6—24007 does not provide the president with authority to impose furlough days on designated members of the public defender's office.

### Question No. 4: President's Authority to Lay Off Specific Employees

■ The fourth certified question asks:

"4. Whether or not the President of the Cook County Board of Commissioners has the authority to hire, terminate, replace, discipline, or direct the assignments of any assistant public defender, clerk or employee of the Cook County Public Defender, or whether the Public Defender is vested with that sole authority, pursuant to 55 ILCS 5/3—4008.1."

There is no evidence in the record and no allegation in the complaint that the president disciplined or directed the assignments of any assistant public defender or staff member. In addition, our supreme court has already ruled that "the public defender has the sole statutory authority to make work assignments to the assistant public defenders." *Burnette v. Terrell*, 232 Ill. 2d 522, 540 (2009). Thus we will consider this question as asking us whether the president had the power to encroach on the public defender's appointment authority, by selecting whom to hire, retain or fire. See 155 Ill. 2d R. 308(a) (purpose of an immediate, interlocutory appeal is solely to "materially advance the ultimate termination of the litigation").

The president argues that (1) the public defender's complaint failed to allege that the president selected whom to fire, and that (2) the public defender lacks standing to raise this issue. The president does not make any arguments that he had the authority to select whom to fire. First, the complaint did allege that assistant public defenders and other staff members received termination letters, sent with the president's "advice and approval," and with "the full authority and effect" of his office, and without consulting the public defender.[2] Second, the question of the public defender's standing is a question separate and distinct from the question of the president's authority, and we already found that the public defender had standing, as discussed above.

In the preceding section, we explained that power over the public

---

[2]Although these allegations were part of count I, which was dismissed, they were also incorporated by reference into count IV, which still stands.

defender's staff was divided between the public defender and the county board, with the public defender receiving the power to hire and fire, and the county board receiving the power to fix the compensation and number of assistant defenders and other staff members. None of the president's arguments with respect to Question No. 4 dissuades us from that conclusion. Thus, we find that the president lacked the authority to select whom to hire, fire or retain among the public defender's staff. See *Burnette v. Terrell*, 232 Ill. 2d 522, 540 (2009) (trial judge lacked the authority to select specific defenders to assign to specific cases).

## CONCLUSION

This interlocutory appeal asked us to decide in essence: (1) whether the public defender is an entity capable of suit; (2) whether the public defender has standing; (3) whether the president had the authority to impose unpaid furlough days on designated members of the public defender's staff; and (4) whether the president had the authority to select whom to hire, fire and retain among the public defender's staff.

In sum, we find (1) that the public defender is an entity capable of bringing a suit to contest the president's selection among the public defender's staff of whom to hire, fire and retain, and to contest the president's imposition of furlough days on designated members of the public defender's staff; (2) that the public defender has standing to contest both the president's interference with the public defender's ability to select his own staff, and the president's imposition of furlough days on designated members of that staff; (3) that the president lacked the authority to impose unpaid furlough days on designated members of the public defender's staff; and (4) that the president lacked the authority to select whom to hire, fire or retain among the public defender's staff.

Certified questions answered.

WOLFSON and HALL, JJ., concur.