2019 IL App (2d) 180709-U
No. 2-18-0709
Order filed December 16, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| NEAL R. PETERSON, | ) | On Petition for Administrative Review from |
| | ) | the Illinois Human Rights Commission. |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2011-CA-10-02 |
| | ) | EEOC No. 21-BA-10064 |
| THE ILLINOIS HUMAN RIGHTS | ) | ALS No. 12-0048 |
| COMMISSION, THE DEPARTMENT | ) | |
| OF HUMAN RIGHTS, and ROCKFORD | ) | |
| PUBLIC SCHOOL DISTRICT No. 205, | ) | |
| | ) | |
| Respondents. | ) | |

_____

JUSTICE BRIDGES delivered the judgment of the court.
Justices Jorgenson and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The Commission properly sustained the Department's dismissal of petitioner's charge of employment discrimination: the Commission assumed the truth of the facts alleged by petitioner but properly found that they did not establish harassment or abuse, and the Commission properly found that, given the lack of evidence that the employer treated a similarly situated younger employee more favorably, petitioner did not make a *prima facie* case that he was fired because of his age.

¶ 2    Petitioner, Neal R. Peterson, seeks review of a final order entered by the Illinois Human

Rights Commission (Commission) sustaining the Department of Human Rights' (Department's)

dismissal of his charge of discrimination against his former employer, Rockford Public School District No. 205 (School District). On appeal, Peterson argues that the Department investigator improperly assessed credibility in light of conflicting evidence and that, given the conflicting evidence, the Commission erred in sustaining the Department's dismissal for lack of substantial evidence. Respondents, the Commission, the Department, and the School District argue that the Commission did not abuse its discretion by sustaining the dismissal. For the reasons that follow, we affirm.

¶ 3                              I. BACKGROUND

¶ 4      On June 13, 2007, Peterson was hired by the School District as a design and marketing specialist in its communications department. From October 2009 until his termination on May 27, 2010, Peterson was supervised by Mark Bonne, chief of communications for the School District. Other employees in the department included: Vince Vitale, audio/visual manager, age 33; Michael McCulloh, writer, age 43; and Jarod Weedman, webmaster, age 28.

¶ 5      On July 7, 2010, Peterson, then 58 years old, filed a three-count charge of discrimination against the School District with the Department. In count A, Peterson alleged that the School District harassed him due to his age. More specifically, Peterson alleged that Bonne made certain "age related comments." For instance, Bonne told Peterson that he needed to "think more outside the box if [he] want[ed] to stay in [his] position," that he "should perform [his] job duties more like co-worker, Vince Vitale," and that he "had to fight it out with a younger employee to get a window view." According to Peterson, Bonne did not harass Vitale in the same manner.

¶ 6      In count B, Peterson alleged that the School District subjected him to an abusive work environment due to his age. According to Peterson, Bonne sent him "negative e-mails." For instance, on March 26, 2010, Bonne wrote that " 'you need to be proactive and not always wait

for me to tell you what to do or how to do it' " and that Bonne "shouldn't have to babysit [Peterson] on a project." Bonne also made the following comments. On April 12, 2010, Bonne told Vitale to "create a video for a banquet to keep all 'the old people awake.' " On April 16, 2010, Bonne told Peterson during a meeting that he "should take a proactive attitude like Vince Vitale and attend (district) events without being assigned." On May 17, 2010, Bonne accused Peterson "of not being able to perform [his] job duties in a timely manner and that [he] was going to have to work longer days." According to Peterson, "[y]ounger employees were not subjected to an age abusive work environment."

¶ 7    In count C, Peterson alleged that the School District discharged him due to his age. According to Peterson, despite meeting the School District's job expectations, he was told that he "failed to perform an assigned job duty." He alleged that "[s]imilarly situated employees under 40 or significantly younger than [he] were not discharged under similar circumstances."

¶ 8    The Department investigated Peterson's charge of discrimination. An investigator interviewed Peterson, Bonne, Cedric Lewis, LaVonne Sheffield, Shanita Davenport, and Vitale. The following relevant evidence was obtained concerning counts A and B of the charge of discrimination. Peterson told the investigator that his performance during his first two years of employment had been "outstanding." In 2009, he was assigned to Bonne's department. Bonne subjected him to "age biased comments." For instance, in December 2009, Bonne stopped by his desk and asked if a child in a photograph was his grandson, and when Peterson indicated that he was, Bonne stated, " '[W]ow, you must be really old, that's too bad.' " Bonne also suggested that Vitale should manage the School District's Facebook page because "they were about the same age." When Bonne told Peterson that he would have to "fight it out" for a window view, Bonne said that Weedman would have an "advantage due to his size and age."

¶ 9    Peterson told the investigator that, in March 2010, Bonne had written him up for alleged unsatisfactory performance in failing to timely post an electronic newsletter. According to Peterson, the problem was caused by technical issues. Bonne told Peterson that he "shouldn't have to babysit him." Peterson stated that Bonne characterized him as "lacking respect for authority, leaving work before completing assignments, and being disrespectful," which Peterson denied and felt was motivated by age discrimination.

¶ 10    Bonne told the investigator that, prior to May 2010, Peterson had exhibited performance issues, which he detailed in a March 2010 written warning. Bonne denied making the comment about Peterson's grandson, denied stating that Vitale should make a video to " 'keep the old people awake,' " and denied that he selected Vitale for the Facebook duties based on his age. Bonne explained that, when the School District considered launching a Facebook page, Weedman was deemed the best candidate for the assignment because he had produced a prototype page, was more savvy with Facebook, and would be good at targeting younger audiences. Bonne agreed that he had asked Peterson to " 'think outside of the box' " and be more like Vitale, "who was more proactive about anticipating the needs of the communications department whereas [Peterson] failed to demonstrate such initiative." Bonne also recalled that, when his division's offices were relocating, he told his employees that they would have to " 'duke it out' " for the two available workspaces with windows, but denied stating that Weedman would have any advantage based on his " 'size and age.' "

¶ 11    Lewis, the School District's chief financial officer, advised the investigator that Peterson approached him in April 2010 and told him that Bonne was " 'riding him' " and picking on him because of his age, but Peterson was not able to give any examples of age-related conduct. Lewis held a meeting with Peterson and Bonne, during which Peterson made no reference to any age-

related conduct on the part of Bonne. According to Lewis, such complaints were to be directed to the superintendent or to human resources.

¶ 12 Davenport, the School District's executive director of human resources, told the investigator that Peterson was hired in June 2007 and that his performance under his previous supervisor had been outstanding. Peterson was assigned to work for Bonne at the end of the 2009 school year. Bonne repeatedly encountered issues with Peterson's ability to perform his work, which led to a written warning on March 24, 2010. At no time did Peterson bring any concerns about age discrimination to the human resources department.

¶ 13 Sheffield, the School District's former superintendent, told the investigator that, in early 2010, she called Peterson and McCulloh into her office to speak with them about concerns with their job performance. She recalled speaking to Peterson a second time about continuing issues with his production. Sheffield also stated that Peterson would complain about Bonne to Sheffield's executive assistant or to Lewis, rather than to her. Sheffield stated that she made it clear to Peterson that Bonne was his supervisor and that he had to follow Bonne's directions and improve his performance.

¶ 14 Vitale told the investigator that he did not recall Bonne making any age-related comments to Peterson.

¶ 15 The investigator also reviewed numerous e-mail transmissions sent between Peterson and Bonne between October 2009 and May 2010, concerning Bonne's work performance. For instance, on October 29, 2009, Bonne e-mailed Peterson expressing that he could not understand why Peterson was spending so much time on a certain project or what the problem was. In a series of e-mails between November 17, 2009, and December 7, 2009, concerning a public service announcement, Boone indicated that the project had been delayed for senseless reasons attributed

to Peterson's failure to perform a task. On December 7 and 18, 2009, Bonne admonished Peterson for failing to complete projects in a timely fashion and in the manner requested. On February 10, 2010, Bonne e-mailed Peterson and advised him that he failed to add certain language to the bottom of an announcement as requested and further instructed him to add a logo. Peterson responded by sending Bonne the logo and telling him to place it where he wanted. Bonne advised that it was not acceptable for him to avoid the task and ask Bonne to do it. Later that day, Peterson sent Bonne an item to review. Bonne told Peterson that a sentence was missing and asked whether he could trust the quality of work " 'coming from some of you.' " Later that month, Bonne again corrected one of Peterson's submissions. On March 24, 2010, Bonne sent a memo to Peterson, the purpose of which was to memorialize ongoing concerns about Peterson's lack of professionalism and respect for authority. Bonne cited to Peterson's defiant tone in responding to his request to perform job duties and to cases where Peterson left work without having completed certain duties. The memo detailed events occurring in February and March 2010 and warned that termination could result if such behavior were not corrected. Additional e-mails concerning Peterson's work performance were exchanged in April and May 2010. In an April 13, 2010, e-mail, Bonne told Peterson that his " 'I didn't understand your directions' " defense was wearing thin.

¶ 16    The investigator obtained the following evidence concerning count C, Peterson's allegation that he was discharged due to his age. Peterson told the investigator that, on May 27, 2010, the School District held an academic all-star banquet. His assignment was to usher students off of the stage during the program and back into the audience. Before the event, he was informed that the photographer hired for the event was not available. He was told that he needed to take pictures of the students on the " 'red carpet' " as they arrived at the event. While people were still arriving, Peterson and McCulloh left to have dinner at a nearby restaurant. They were gone for about half

an hour. They returned to take pictures of people who were still arriving. On May 28, 2010, Sheffield and Bonne confronted him about leaving the event. Peterson told them that he thought he had completed his duties. Sheffield fired him. Peterson told the investigator that Vitale, who had also been taking pictures, had not been discharged. Peterson also told the investigator that Vitale did not leave the event as he and McCulloh had.

¶ 17    Davenport told the investigator that Sheffield advised her about Peterson leaving the event. She interviewed Peterson, who told her that he was not informed that he had to be there the entire time. When she interviewed McCulloh, he admitted to leaving the event to go eat, despite being responsible for taking pictures. Sheffield told Davenport that the men's behavior was an embarrassment to the School District and that she wanted to fire them on the night of the banquet. Davenport told her that the process required an investigation. A recommendation was made to the school board to fire Peterson and McCulloh but it was not carried out until the June board meeting. Peterson gathered his personal belongings on May 28, 2010, and left.

¶ 18    Bonne told the investigator that Peterson and McCulloh were assigned to take pictures of the students as they arrived at the banquet. When Sheffield noticed that only Vitale was taking pictures, Bonne attempted to contact them by phone but was not able to reach them. When they returned, Peterson told him that Bonne's assistant told them they could leave. Bonne's assistant denied giving them permission or being in a position to do so. Bonne told the investigator that, prior to May 2010, he discussed the possibility of terminating both Peterson and McCulloh due to unsatisfactory job performance. A recommendation to discharge both men was made on May 28, 2010, based on the fact that they had abandoned a job assignment.

¶ 19    Vitale told the investigator that he was told on the day before the banquet that he was assigned to take pictures as " 'paparazzi' " of the students arriving at the banquet, in addition to

his other duties. Peterson and McCulloh began taking pictures at 5 p.m. Sometime later, Vitale was approached by Sheffield, who could not locate Peterson and McCulloh. Vitale called them and told them they had better return. Peterson and McCulloh returned and continued taking pictures. Vitale never left the premises.

¶ 20 On October 28, 2011, the Department dismissed the charge for lack of substantial evidence. With respect to the counts of harassment and abuse, the Department found that Peterson's allegations against Bonne failed to establish a pattern of comments or conduct that referenced or alluded to Peterson's age in any derogatory context. Thus, the Department concluded that there was no evidence to establish the existence of an environment of actionable workplace harassment or abuse. With respect to the allegation that Peterson was discharged due to his age, the Department found that the evidence showed that Peterson was not meeting the expectations of his supervisor, that Peterson and McCulloh left an assignment without the authorization of a supervisor, and that both individuals were terminated as a result. The Department further found that there was no evidence that a similarly situated younger employee had engaged in comparable conduct and had been treated differently.

¶ 21 Peterson filed a request for review by the Commission of the Department's dismissal and attached several exhibits. In his request, Peterson alleged that his attached evidence showed that "Bonne abusively manipulated [his] position with the District," advertised Peterson's position while he was still employed, "earmarked a young male" for the job, was "never completely truthful with [him]," and "intended to illegally reduce [his] salary." Peterson further alleged that the investigator failed to contact certain witnesses, such as McCulloh, Weedman, Luz Ramirez (his former supervisor), and Rosann Hawkinson (Bonne's former assistant), and failed to check Vitale's phone records. Peterson maintained that the investigator did not "ask[] him appropriate

questions, or request[] any substantive evidence." As a rebuttal to the investigation, Peterson claimed that, when he and McCulloh left the "red carpet" area, Vitale was no longer present and his "whereabouts were unknown" to Peterson, but Vitale was not terminated for abandoning his duties. Peterson also claimed that, while he and McCulloh were taking a "short supper" break, Caeser Mickens was present and bought him a drink. According to Peterson, Mickens was the "Head of Employee Advancement" for the School District and was also taking pictures on the "red carpet." Mickens was not terminated.

¶ 22 The Department filed a response to Peterson's request for review, asking that its dismissal for lack of substantial evidence be sustained. The Department argued that Peterson failed to provide any evidence that would warrant a reversal of its determination.

¶ 23 The Commission sustained the dismissal. With respect to counts A and B,[1] the Commission noted that actionable harassment occurs when the workplace is permeated with discriminatory ridicule and insult that are sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. See *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). The Commission found that, "[e]ven if taken as true," the statements allegedly made by Bonne about Peterson's age "were isolated and did not rise to the level of harassment." In addition, the Commission found that the comments concerned work performance rather than age.

---

[1] In its analysis, the Commission specifically referenced only count A and count C. However, it is clear that its discussion of count A incorporated the allegations that Peterson included in count B.

¶ 24 As to count C, the Commission explained that, to establish a *prima facie* case of discrimination, the evidence must show that (1) Peterson falls within a protected class, (2) Peterson was performing his work in a satisfactory manner, (3) Peterson was subjected to adverse action, and (4) the School District treated a similarly situated employee outside of Peterson's protected class more favorably than Peterson under similar circumstances. See *Marinelli v. Human Rights Commission*, 262 Ill. App. 3d 247, 253-54 (1994). The Commission found that Peterson had not established the fourth element—there was no similarly situated younger employee treated more favorably than Peterson.

¶ 25 Peterson timely petitioned for review in this court. See 775 ILCS 5/8-111(B)(1) (West 2018).

¶ 26                                    II. ANALYSIS

¶ 27 Peterson argues that the Department investigator improperly assessed credibility, in light of conflicting evidence, and that, given the conflicting evidence, the Commission erred in sustaining the Department's dismissal of his charge of discrimination for lack of substantial evidence. Respondents argue that the Commission did not abuse its discretion by sustaining the dismissal of Peterson's charge of discrimination. We agree with respondents.

¶ 28 The Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2018)) prohibits discrimination against a person on the basis of age. *Id.* § 1-102(A); see *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 916 (2010). Under the Act, upon the filing of a discrimination charge, the Department must conduct a full investigation of the allegations and prepare a written report. 775 ILCS 5/7A-102(C)(1), (D)(1) (West 2018); *Owens*, 403 Ill. App. 3d at 917. Thereafter, the Department must review the report to determine whether there is "substantial evidence" that the alleged discrimination has occurred. 775 ILCS 5/7A-102(D)(2) (West 2018); *Owens*, 403 Ill.

App. 3d at 917. "Substantial evidence," as defined by the Act, is "evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." 775 ILCS 5/7A-102(D)(2) (West 2018); see *Owens*, 403 Ill. App. 3d at 917. If the Department determines that there is no substantial evidence to support the allegation, the charge is dismissed. 775 ILCS 5/7A-102(D)(3) (West 2018); *Owens*, 403 Ill. App. 3d at 917. The complainant may then seek review by the Commission of the dismissal. 775 ILCS 5/7A-102(D)(2)(a) (West 2018); see *Owens*, 403 Ill. App. 3d at 917 (requests for review filed prior to January 1, 2008, were handled by chief legal counsel). If the Commission sustains the dismissal, the complainant may seek review in this court of the Commission's order. 775 ILCS 5/8-111(B)(1) (West 2018); *Allen v. Lieberman*, 359 Ill. App. 3d 1170, 1180 (2005).

¶ 29    This court reviews the decision of the Commission, not the Department. See *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 180 (1989). The Commission's findings of fact are entitled to deference and "shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." 775 ILCS 5/8-111(B)(2) (West 2018); see *Stone v. Department of Human Rights*, 299 Ill. App. 3d 306, 314 (1998). The Commission's decision to sustain the dismissal of a charge will be reversed only where the decision was arbitrary and capricious or an abuse of discretion. *Owens*, 403 Ill. App. 3d at 917. A decision is arbitrary and capricious if it contravenes legislative intent, fails to consider a critical aspect of the matter, or offers an explanation so implausible that it cannot be considered as a result of the exercise of the agency's expertise. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 33. An abuse of discretion will be found where no reasonable person could agree with the decision of the Commission. *Id.*

¶ 30 Before reaching the merits, we note the following. Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018) requires an appellant's brief to contain argument supported by citations of the authorities and the pages of the record relied on. "A failure to cite relevant authority violates Rule 341 and can cause a party to forfeit consideration of the issue." *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 23. "A brief that lacks any substantial conformity to the pertinent supreme court rules may justifiably be stricken." *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 7. In his opening brief, Peterson cites a single case: *Cooper v. Salazar*, No. 98 C 2930, 2001 WL 1351121 (N.D. Ill. Nov. 1, 2001), an unreported federal district court decision. Unreported federal district court decisions have no precedential value in this court. See *County of Du Page v. Lake Street Spa, Inc.*, 395 Ill. App. 3d 110, 122 (2009); *Burnette v. Stroger*, 389 Ill. App. 3d 321, 329 (2009). Because Peterson has failed to provide us with any authority to support his arguments, we are free to strike his brief and dismiss the appeal. However, striking an appellate brief "is a harsh sanction and is appropriate only when the violations of procedural rules hinder our review." *Hall*, 2012 IL App (2d) 111151, ¶ 15. Here, because the issues are apparent and we have the benefit of cogent briefs from respondents, we will entertain the appeal. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001).

¶ 31 We first address Peterson's arguments that the Department investigator improperly assessed credibility, in light of conflicting evidence, and that the Commission improperly sustained the Department's findings.[2] According to Peterson, there was "conflicting evidence," given

---

[2] Peterson's argument is premised on the *Cooper* decision. In that case, the district court

Bonne's denial that he made certain age-related statements. However, the record is clear that, despite Bonne's denial, both the Department and the Commission assumed that the statements had, in fact, been made. In its response to Peterson's request for review, the Department acknowledged that the "investigation reveals conflicting statements as to whether Bonne made statements about Complainant's age and made a statement about keep older prospective retirees awake." Nevertheless, the Department then stated: "However, the alleged incidents were isolated and do not rise to the level of harassment." Likewise, the Commission made clear that it assumed that Bonne had made all the alleged statements, ruling that, "[e]ven if taken as true," the statements "were isolated and did not rise to the level of harassment." Thus, Peterson's claim that improper credibility determinations were made is belied by the record.

¶ 32    We turn now to the issue of whether the Commission abused its discretion in sustaining for lack of substantial evidence the Department's dismissal of Peterson's allegations of "age related harassment" and "an abusive work environment." For a claim of harassment to be actionable, the aggrieved employee must present evidence that the employer's behavior was severe or pervasive enough to alter the conditions of the employee's employment and create a hostile and abusive work environment. *Cook County Sheriff's Office v. Cook County Comm'n on Human Rights*, 2016 IL App (1st) 150718, ¶ 32. The employee must also show that he or she subjectively perceived the employer's behavior as hostile or abusive. *Id.* In determining whether these elements have been

_____

permanently enjoined the Department from "relying on any credibility determinations made without affording complainants an opportunity to confront and cross examine witnesses against them." *Cooper*, No. 98 C 2980, 2001 WL 1351121, at 6.

met, several factors should be considered, including: " 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Id.* (quoting *Harris*, 510 U.S. at 22-23). "[T]he 'mere utterance of an...epithet which engenders offensive feelings' is insufficient to constitute harassment." *Id.* (quoting *Harris*, 510 U.S. at 21-22).

¶ 33 Peterson alleged that, from December 2009 through May 2010, Bonne harassed and abused him because of his age. In support, Peterson cited seven instances of what he claimed to be age-related discriminatory statements made by Bonne: (1) Bonne told Peterson that he needed to "think more outside the box if [he] want[ed] to stay in [his] position"; (2) Bonne told Peterson that he "should perform [his] job duties more like co-worker, Vince Vitale"; (3) Bonne told Peterson that he would have to "fight it out" with Weedman for a window view and that Weedman would have an "advantage due to his size and age"; (4) in an e-mail to Peterson, Bonne wrote that " 'you need to be proactive and not always wait for me to tell you what to do or how to do it' " and that Bonne "shouldn't have to babysit [him] on a project"; (5) Bonne told Vitale to "create a video for a banquet to keep all 'the old people awake' "; (6) upon learning that the child in a photograph on Peterson's desk was his grandson, Bonne stated, " 'wow, you must be really old, that's too bad' "; and (7) Bonne suggested that Vitale manage the School District's Facebook page because "they were about the same age."

¶ 34 The Commission's finding that these statements do not rise to the level of actionable harassment is not against the manifest weight of the evidence. Only two of Bonne's comments either directly or indirectly referenced Peterson's age—his comment to Bonne that he "must be really old" and his comment that Weedman would have an advantage in a fight due to his size and

age. Bonne's comment about keeping " 'the old people awake' " related only generally to age and did not reference Peterson at all. The remaining comments were related to Peterson's job performance, rather than his age. Two offensive comments over the course of several months are insufficient to establish that Bonne's conduct was "severe and pervasive," and therefore Peterson failed to establish a *prima facie* case of age discrimination based on harassment and abuse. Thus, the Commission's decision to sustain the dismissal of counts A and B for lack of substantial evidence was not arbitrary and capricious or an abuse of discretion.

¶ 35    We next consider whether the Commission abused its discretion in sustaining for lack of substantial evidence the Department's dismissal of count C, Peterson's allegation that he was discharged due to his age. Discrimination claims are analyzed by employing a three-prong test where the petitioner must first establish a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Owens*, 403 Ill. App. 3d at 918-19. If the petitioner establishes a *prima facie* case, a rebuttable presumption arises that the employer engaged in unlawful discrimination. *Id.* at 919. Under the second prong, to rebut the presumption, the employer must articulate a legitimate, nondiscriminatory reason for its decision. *Id.* If the employer does so, then under the third prong, the petitioner must prove by a preponderance of the evidence that the employer's reason was merely a pretext for discrimination. *Id.* The petitioner maintains the burden of persuasion throughout the proceedings. *Id.*

¶ 36    To establish a *prima facie* case of employment discrimination to satisfy the first prong, the petitioner must demonstrate that: (1) he is a member of a protected class; (2) he met his employer's legitimate business expectations; (3) he suffered an adverse employment action; and (4) the employer treated a similarly situated employee outside of the protected class more favorably than the petitioner. *Id.*

¶ 37    Here, the Commission found that Peterson failed to make a *prima facie* case, because he did not demonstrate that the School District treated a younger, similarly situated employee more favorably than Peterson. We agree. The evidence is undisputed that Peterson and McCulloh, a younger employee, both left their work assignment without asking permission to do so and that both were terminated as a result. Although Peterson asserted that Vitale, a younger employee who was also responsible for taking pictures at the event, was not discharged, there was no evidence that Vitale left the event without permission. Thus, the Commission's decision to sustain the dismissal of count C for lack of substantial evidence was not arbitrary and capricious or an abuse of discretion.

¶ 38    Last, we note that Peterson also argues that he "provided 29 pages of documents and a list of witnesses in his appended Request for Review, in what the Complainant would consider more than a mere scintilla, and possibly approaching a preponderance [of evidence]." Peterson claims that none of his evidence was commented on by the Department or the Commission. According to Peterson, his witnesses would have corroborated his account of Bonne's age-related remarks and the documents would have established that he was performing his work in a satisfactory manner. However, as already noted, the Department and the Commission assumed Bonne's alleged remarks and still found them to be insufficient to establish discrimination. In addition, even if Peterson could establish that he was performing his work in a satisfactory manner, this would not be enough to establish a *prima facie* case that he was fired due to his age, given his inability to establish that that the School District treated a younger, similarly situated employee more favorably than Peterson.

¶ 39                                III. CONCLUSION

¶ 40    For the reasons stated, we affirm the decision of the Commission sustaining the Department's dismissal for lack of substantial evidence of Peterson's charge of discrimination.

¶ 41    Affirmed.