# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Omar M.*, 2012 IL App (1st) 100866

---

| | |
|---|---|
| Appellate Court Caption | *In re* OMAR M., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Omar M., Respondent-Appellant). |
| District & No. | First District, Sixth Division<br>Docket No. 1-10-0866 |
| Filed<br>Rehearing denied | June 29, 2012<br>August 23, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Section 5-810 of the Juvenile Court Act, the extended jurisdiction juvenile prosecution statute, does not violate due process and is constitutional, as it provides reasonable standards to prevent arbitrary and discriminatory enforcement and is not unconstitutionally vague, either on its face or as applied to this respondent; further it does not violate *Apprendi*, which is inapplicable to prosecutions under section 5-810. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-JD-155; the Hon. Patricia Mendoza, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Heidi Linn Lambros, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Annette Collins, Assistant State's Attorneys, of counsel), for the People.

Panel

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.

Justices Lampkin and Palmer concurred in the judgment and opinion.

**OPINION**

¶ 1        Omar M., the respondent, was prosecuted, convicted, and sentenced under the extended jurisdiction juvenile prosecutions (EJJ prosecution) statute (705 ILCS 405/5-810 (West 2008)), for first-degree murder. When a juvenile receives an EJJ prosecution designation and a jury finds him guilty, the EJJ prosecution statute then requires a judge to impose two sentences: a juvenile sentence; and an adult criminal sentence that is stayed on successful completion of the terms of the juvenile sentence. 705 ILCS 405/5-810(4) (West 2008). After a jury found respondent guilty and the trial court heard aggravation and mitigation, he received the maximum juvenile sentence of incarceration until his twenty-first birthday. He also received a 20-year stayed adult sentence.

¶ 2        On this appeal, respondent claims: (1) that the State's proffer of evidence for the EJJ prosecution designation was "untrue" because two of the State's four eyewitnesses failed to appear at trial; (2) that the EJJ prosecution statute violates a juvenile respondent's right to due process because the EJJ prosecution designation is decided by a judge by a preponderance of the evidence instead of by a jury beyond a reasonable doubt; and (3) the EJJ prosecution statute is unconstitutionally vague. For the following reasons, we do not find respondent's arguments persuasive, and we affirm.

¶ 3                                        BACKGROUND

¶ 4        On January 10, 2008, the State charged respondent Omar M. with two counts of first-degree murder, in violation of section 9-1(a) of the Criminal Code of 1961 (720 ILCS 5/9-1(a) (West 2006)), arising out of events that occurred on December 24, 2007. Both counts allege that respondent beat the victim, Francisco Reyes, to death using his hands and feet. The first count alleges that respondent intentionally or knowingly beat the victim, thus causing his death. 720 ILCS 5/9-1(a)(1) (West 2006). The second count alleges that respondent beat the victim knowing that his actions created a strong probability of death or great bodily harm. 720 ILCS 5/9-1(a)(2) (West 2006). The State initially alleged that respondent used an aluminum baseball bat and his feet, but before trial, the State moved to

amend the charging statement to replace "aluminum baseball bat" with "hands."

¶ 5   On January 25, 2008, the State filed a motion to designate the proceeding as an EJJ prosecution, alleging that respondent was 14 years old at the time of the murder and that probable cause existed to indicate that he committed the offense. 705 ILCS 405/5-810 (West 2006). Respondent was born March 13, 1993. The proceedings were transferred to the EJJ prosecution designation judge (the judge) for a hearing to determine whether probable cause existed to believe the allegations against respondent and whether clear and convincing evidence supported the propriety of sentencing respondent as an adult.

¶ 6   At the hearing, the State proffered that at trial, it would call Juan Ramirez, who had discovered the body and called the police, as well as four eyewitnesses to the murder: (1) Jaime Gonzales, (2) Juliana Flores, (3) Fernando Garcia, and (4) Sielvia Ortiz. The State also proffered that it would call Dr. Mitra Kalelkar to testify about the cause of the victim's death.

¶ 7   First, the State proffered that it would call Juan Ramirez, an employee at the Popocatapetal Tortilla Company (factory), to testify as follows. Approximately one month before December 24, 2007, some individuals, who had been chased by local gang members Danny R. and Martin R., had sought safety inside the factory. The employees obliged, granting the individuals entrance into the factory and locking the doors behind them. Martin R. and Danny R. became irate and proceeded to break the windows of vehicles belonging to the factory employees. On the night of December 24, 2007, Ramirez asked the victim to take a forklift to the parking lot and pick up some equipment and bring it back to the factory. When the victim did not return after approximately 20 minutes, Ramirez went to the parking lot and observed the victim lying unconscious on the ground and bleeding from the head. He observed a man known as "Chino," later identified as Fernando Garcia, near the scene, and believed that Garcia had witnessed an attack on the victim. Ramirez then called police.

¶ 8   The State proffered that eyewitness Jaime Gonzales would testify as follows. Gonzales lived near the factory, and on the night of December 24, 2007, he observed Danny R., whom Gonzales knew "from the neighborhood," talking on a cell phone. Gonzales heard Danny R. tell the person on the other end of the telephone conversation to come to the factory because some "flakes" were working there. Soon, four other youths arrived at the factory, including respondent. Gonzales recognized them as Martin R., Carlos L., Ishmael M., and respondent. Danny R. and the other four youths then ran toward the factory and the victim, who was driving a forklift. The victim attempted to flee, but Carlos L. caught him and threw him to the ground. All five offenders, including respondent, began kicking and punching the victim without pause for approximately two minutes. Ishmael M. dropped a piece of concrete on the victim's head. Gonzales observed Adolfo Z., a sixth offender, appear. Gonzales identified Adolfo Z. as a known member of the Latin Kings street gang. As the six offenders beat the victim, they continuously yelled: "F*** him up!" After the beating, all six offenders ran away, leaving the victim on the ground. That night, the police questioned Gonzales at his home, but he did not tell them what he observed because relatives of respondent were watching the police interview witnesses, and Gonzales was afraid of retaliation. Later that night, he called the police on his own and went to the police station with his girlfriend, Juliana Flores, to inform them of what he had observed. Gonzales later identified all six offenders in photo arrays and identified all of the offenders except Carlos L. in actual lineups

-3-

at the police station. He never observed a lineup with Carlos L. in it.

¶ 9       The State proffered that eyewitness Juliana Flores, Gonzales' girlfriend, would testify to the same facts as Gonzales. Flores also observed one of the offenders strike the victim with a baseball bat, but the State did not proffer whether Flores would be able to identify which offender used the bat. When the police arrived at her and Gonzales' home, she did not say anything because she knew that all six offenders were members of the Latin Kings street gang, and she feared retaliation. Flores also identified all six offenders in a photo array and identified respondent, Ishmael M., Martin R., and Danny R. in a lineup.

¶ 10      The State proffered that eyewitness Fernando Garcia, also known as "Chino," resided near the factory and would testify as follows. Roughly one month prior to December 24, 2007, Garcia observed Martin R. and Danny R. outside the tortilla factory. Martin R. and Danny R. yelled gang slogans at two unnamed individuals who happened to walk past the factory, then Martin R. and Danny R. tried to start a fight with the two individuals. The two individuals ran toward the factory to escape Martin R. and Danny R., and the employees locked the factory doors after the two individuals entered. When Martin R. and Danny R. could not enter the factory, they began breaking the windows of the employees' vehicles. On the night of December 24, 2007, Garcia heard someone talking outside his window. He recognized the voice as belonging to Danny R. He heard Danny R. saying something to the effect of "Come on, one of the factory workers is out there. Let's go f*** him up." Garcia went to his window and observed Carlos L., Martin R., Ishmael M., and respondent, all of whom he knew by name or nickname. He also knew that all five offenders were members of the Latin Kings. Garcia also observed the beating, and observed Carlos L. strike the victim with a concrete block. Adolfo Z. arrived and joined in the beating of the victim as the offenders yelled: "F*** him up" and "Kill him." After the six offenders ran away, Garcia exited his home and observed one of the victim's coworkers. When the police questioned Garcia that night, he did not tell them what he had observed because he was afraid of retaliation from the relatives of the offenders. Garcia called the police on December 26, 2007, and went to the police station to inform the police of what he had observed. Garcia identified all six offenders in a photo array and an actual lineup. Garcia also observed the prior incident involving Martin R., Danny R., and the two unnamed individuals.

¶ 11      The State proffered that Sielvia Ortiz, Garcia's wife, would testify to the same facts as Garcia. She also observed Adolfo Z. reach into the victim's pants and jacket pockets once the victim was unconscious and remove his wallet. Ortiz recognized all six offenders and knew that they were members of the Latin Kings, and she later identified Danny R., Martin R., Ishmael M., and respondent in a photo array, and in a lineup identified all of the offenders except Adolfo Z. as being involved in the beating. She identified Adolfo Z. in a lineup as someone she believed to be involved in the beating, but could not be 100% sure.

¶ 12      The State proffered that Dr. Mitra Kalelkar, a deputy chief medical examiner for Cook County, performed the autopsy of the victim on December 28, 2007, and that she opined that the victim died from cranial cerebral injuries as the result of a trauma.

¶ 13      On April 9, 2008, the judge found probable cause for the charges of first-degree murder. The next stage of the EJJ prosecution proceedings determined whether there was clear and

convincing evidence that sentencing under the Criminal Code would be inappropriate. The State offered into evidence respondent's arrest record for burglary in 2006, showing that the State did not prosecute the charges.

¶ 14 Respondent offered documents issued from the juvenile detention center, including certificates of completion for anger management, risk reduction, and substance abuse classes, and awards for good behavior and academic achievement. Respondent proffered that if his teacher, Ms. Newsome, were to testify at trial, she would state that respondent has difficulty with subjects like reading comprehension, but he is "working very hard" to overcome his difficulties. Finally, respondent introduced a report prepared by licensed clinical social worker Elizabeth Kooy. The report stated that respondent was small for his age and outlined his home life. Respondent lived with his mother and siblings on the second floor of a walk-up building, and respondent's father and the father's girlfriend lived on the first floor. The report indicated that respondent, his mother, and his siblings did not communicate with the father, despite living in the same building.

¶ 15 The judge found that respondent's prior delinquent or criminal history was "non-existent," and further found that he was required by statute to give greater weight to that factor. The judge found that respondent's home life was "chaotic," although he also found that respondent had not been the victim of abuse or neglect

¶ 16 The judge also found that the offense was extremely serious and that all of the offenders were "egging each other on," and the judge was mandated to give that factor greater weight. The judge found that respondent personally used his hands and feet and a broken baseball bat to strike the victim, and that the offense had been aggressive and premeditated.

¶ 17 The judge determined that treatment within the juvenile justice system was advantageous to the programs and facilities of the adult system. The judge found that there was not a reasonable likelihood that respondent could be rehabilitated before age 21, in part because his "chaotic" family situation and the fact that he was out of his home after midnight "in the presence of gangbangers," some of whom were members of respondent's family. The judge ultimately concluded that there was no clear and convincing evidence that an adult sentence would not be appropriate, and he granted the motion to designate the case as an extended jurisdiction juvenile prosecution. The case was then transferred back to the trial court.

¶ 18 Before trial, the State stated that it was not able to now locate two of the witnesses it had included in its proffer before the judge. The missing witnesses were (1) Juan Gonzales and (2) Juliana Flores. Gonzales and Flores were the only witnesses who had observed respondent use a baseball bat to attack the victim, and the State moved to strike the language from the charging statement asserting that respondent used a baseball bat to strike the victim, and amend it to state that he used his feet and hands. The trial court granted the motion.

¶ 19 At trial, eyewitnesses Fernando Garcia and Sielvia Ortiz testified as the State had previously proffered. Dr. Mitra Kaelkar testified that she performed the autopsy and that the victim died from cranial cerebral injuries.

¶ 20 On December 4, 2009, the jury found respondent guilty of first-degree murder. As noted, after hearing aggravation and mitigation, the trial court sentenced respondent to the Department of Juvenile Justice until his twenty-first birthday, and ordered respondent to

serve a minimum of five years' imprisonment before he could be placed on parole. The trial court also sentenced respondent to a 20-year adult sentence to be stayed, pursuant to the EJJ prosecution statute, on the condition that he did not violate the provisions of his juvenile sentence. At the sentencing, the assistant public defender stated that the sentencing order had been "drafted by [the public defender]." The trial court declined to explain the terms and conditions of how the adult sentence would be triggered, stating that it would "not attempt to explain to you when and how this State's sentence could kick in. Your lawyers will do that." However, the trial court made it clear that if respondent did not "follow all of the rules and regulations," he would serve both the juvenile and adult sentences.

¶ 21                                  ANALYSIS
¶ 22                    I. Designation of Proceeding as an Extended
                            Jurisdiction Juvenile Prosecution

¶ 23    Respondent first argues that the trial court erred in designating his first-degree murder proceeding as an EJJ prosecution. Respondent's argument largely relies on the fact that the State did not prove at trial several of the factors that the judge relied on to designate the case as an EJJ prosecution. Thus, respondent claims that the State's proffer was unsubstantiated and untrue. As a result of the judge's reliance on the State's erroneous proffer, respondent argues that his 20-year adult sentence should be vacated. The State responds (1) that respondent's arguments are based on misrepresentations of the record, and (2) that respondent's trial counsel did not object to the State's proffer during the prosecution hearing or during the trial, and thus, respondent's argument is forfeited. The State also argues that the trial court appropriately considered and weighed all relevant factors during the prosecution hearing, and it was not an abuse of discretion for the trial court to designate these proceedings as an EJJ prosecution.

¶ 24    On January 25, 2008, the State filed a motion to designate the proceeding as an EJJ prosecution. When the juvenile court designates a case as an EJJ prosecution, the minor subject to the prosecution is entitled to a jury trial. 705 ILCS 405/5-810(3) (West 2008). If the trial results in a guilty verdict, the trial court must impose a juvenile sentence and an adult sentence, staying the adult sentence on the condition that the minor not violate the provisions of the juvenile sentence. 705 ILCS 405/5-810(4) (West 2008).

¶ 25    The EJJ prosecution statute provides that the State's Attorney may file a petition, at any time prior to the commencement of the minor's trial, to designate the proceeding as an EJJ prosecution. 705 ILCS 405/5-810(1)(a) (West 2008). The petition must allege the commission by a minor 13 years of age or older of any offense which would be a felony if committed by an adult. 705 ILCS 405/5-810(1)(a) (West 2008). If the judge assigned to hear and determine petitions to designate the proceeding as an EJJ prosecution determines that there is probable cause to believe that the allegations in the petition and motion are true, there is a rebuttable presumption that the proceeding shall be designated as an EJJ prosecution. 705 ILCS 405/5-810(1)(a) (West 2008). The judge shall enter an order designating the proceeding as an EJJ prosecution proceeding unless the judge, after evaluating the factors listed below, makes a finding based on clear and convincing evidence that sentencing under

Chapter V of the Code of Corrections would not be appropriate for the minor:

> "(b) The judge shall enter an order designating the proceeding as an extended jurisdiction juvenile proceeding unless the judge makes a finding based on clear and convincing evidence that sentencing under the Chapter V of the Unified Code of Corrections would not be appropriate for the minor based on an evaluation of the following factors:
>
> > (i) the age of the minor;
> >
> > (ii) the history of the minor, including:
> >
> > > (A) any previous delinquent or criminal history of the minor,
> > >
> > > (B) any previous abuse or neglect history of the minor, and
> > >
> > > (C) any mental health, physical and/or educational history of the minor;
> >
> > (iii) the circumstances of the offense, including:
> >
> > > (A) the seriousness of the offense,
> > >
> > > (B) whether the minor is charged through accountability,
> > >
> > > (C) whether there is evidence the offense was committed in an aggressive and premeditated manner,
> > >
> > > (D) whether there is evidence the offense caused serious bodily harm,
> > >
> > > (E) whether there is evidence the minor possessed a deadly weapon;
> >
> > (iv) the advantages of treatment within the juvenile justice system including whether there are facilities or programs, or both, particularly available in the juvenile system;
> >
> > (v) whether the security of the public requires sentencing under Chapter V of the Unified Code of Corrections:
> >
> > > (A) the minor's history of services, including the minor's willingness to participate meaningfully in available services;
> > >
> > > (B) whether there is a reasonable likelihood that the minor can be rehabilitated before the expiration of the juvenile court's jurisdiction;
> > >
> > > (C) the adequacy of the punishment or services." 705 ILCS 405/5-810(1)(b) (West 2008).

¶ 26    In considering these factors, the trial court shall give greater weight to the seriousness of the alleged offense and the minor's prior record of delinquency than to other factors listed in this subsection. 705 ILCS 405/5-810(1)(b) (West 2008). The standard of review of the decision to designate a proceeding as an EJJ prosecution is abuse of discretion. *In re Dontrale E.*, 358 Ill. App. 3d 136, 139 (2005). "An abuse of discretion occurs when no reasonable person would take the view adopted by the court." *Trettenero v. Police Pension Fund*, 333 Ill. App. 3d 792, 801 (2002) (citing *In re Marriage of Blunda*, 299 Ill. App. 3d 855, 865 (1998)).

¶ 27    First, this court must determine whether respondent waived the issue when counsel did not object to respondent's EJJ prosecution designation after trial and did not ask for reconsideration of the ruling in a posttrial motion. The State argues that respondent's trial

counsel did not object to the State's proffer during the prosecution hearing when respondent's counsel stated, "[m]inor waives opening. And we have no argument as to probable cause." Respondent's trial counsel did not contest any of the State's arguments for probable cause or present any evidence on probable cause. The State also argues that respondent did not object during trial, when the State amended the petition for adjudication of wardship to remove mention of the use of a bat, because witnesses who had seen respondent use the bat were in hiding and evading service, and thus could not be forced to testify. The State also notes that respondent's trial counsel did not object to how the trial evidence would then be different from what was proffered as the prosecution hearing. As a result, the State contends that the respondent's argument is forfeited because he has not established plain error.

¶ 28    A criminal respondent preserves an error for review by objecting to the claimed error at trial and raising the issue in a posttrial motion. *In re M.W.*, 232 Ill. 2d 408, 430 (2009). Similarly, a minor must object at trial to preserve a claimed error for review. *In re Samantha V.*, 234 Ill. 2d 359 (2009). However, minors are not required to file a postadjudication motion. *In re W.C.*, 167 Ill. 2d 307, 327 (1995). Respondent's failure to object at trial forfeits consideration of the claimed error on appeal, unless respondent can demonstrate plain error. *M.W.*, 232 Ill. 2d at 430.

¶ 29    The plain-error doctrine allows a reviewing court to consider unpreserved error when either: (1) an error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the respondent, or (2) an error occurs that is so serious it affected the fairness of the respondent's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007); *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). Under both prongs of the plain-error test, the burden of persuasion remains with the proponent. *People v. Walker*, 232 Ill. 2d 113, 124-25 (2009). Before considering whether the plain-error exception applies, we must determine whether any error occurred at all. *Herron*, 215 Ill. 2d at 187; *People v. Johnson*, 218 Ill. 2d 125, 139 (2005). Thus, this court must conduct a substantive review of the issues raised. *Walker*, 232 Ill. 2d at 124-25. Accordingly, we must determine whether the trial court abused its discretion when it designated respondent's case as an EJJ prosecution. See *Dontrale E.*, 358 Ill. App. 3d at 139.

¶ 30    Respondent states that an evaluation of the factors listed in the EJJ prosecution statute shows that respondent should not have received a stayed adult sentence and that respondent's case should not have been designated an EJJ prosecution. In regard to the "circumstances of the offense" factor, respondent argues that there are several differences between the State's proffer during the EJJ prosecution hearing and the trial evidence. First, respondent claims that the State proffered that two witnesses, Jaime Gonzales and Juliana Flores, would testify that they observed respondent leave the scene and return with an aluminum bat which respondent proceeded to beat the victim with. Second, the State proffered that two other witnesses, Fernando Garcia and Sielvia Ortiz, would testify that respondent was a Latin Kings gang member. Finally, the State proffered that respondent's motive for attacking the victim was a prior incident, which took place on December 4, 2007, where two of the offenders fought with two individuals and the two individuals received shelter from the

offenders from employees of the tortilla factory. Respondent argues that the evidence the State proffered at the hearing were not proven at trial, as there was no evidence at trial respondent used an aluminum bat, was a gang member, and had a motive to retaliate against the factory employees. Thus, respondent claims that the trial court's findings regarding the factor of the circumstances of the offense were based on the State's "erroneous" and "uncorroborated" proffers which were not proven at trial, and thus, it was an error for the trial court to designate respondent's case an EJJ prosecution.

¶ 31    The State responds by arguing that respondent's claims are false and that its proffer during the EJJ prosecution was not untrue or a misrepresentation. The State argues that the record shows how its two witnesses, Jaime Gonzales and Juliana Flores, were scared, reluctant to testify during trial, and evaded service. Prior to any court proceedings, both Jaime Gonzales and Juliana Flores made oral and written statements to the police that they knew all of the offenders to be members of the Latin Kings gang members and that they both observed respondent use an aluminum baseball bat to beat the victim.

¶ 32    The State also argues that there is substantial evidence in the record showing respondent to be a Latin Kings gang member and that the trial court's suppression of gang-related evidence was not due to the lack of evidence of respondent's gang membership, but due to the court's finding that there was insufficient evidence that the offense charged was gang-motivated. The record shows that the trial court found that gang membership can be established, but the court barred evidence of gang membership because it found that there was not enough of a connection between the offense and gang activity. Evidence regarding motive for the attack was not introduced at trial, and as a result, the trial court found that there was not enough evidence linking respondent to the prior incident which occurred on December 4, 2007.

¶ 33    The State's arguments and the record both demonstrate that the State's proffer was not erroneous or based on misrepresentations. The record demonstrates that both respondent's trial counsel and the State had difficulty locating and bringing the two witnesses, Jaime Gonzales and Juliana Flores, to court to testify. The trial court also found that respondent's gang membership could be established, but such evidence was not allowed at trial because of the lack of connection between the gang activity and the offense. Respondent argues that the trial judge should have reevaluated the elements of an EJJ prosecution; however this would be tantamount to imposing a new step in the judicial process. Nowhere in the EJJ prosecution statute does it state that a judge's designation of a proceeding as an EJJ prosecution must be reevaluated if elements of the State's proffer from the pretrial EJJ prosecution hearing are not later proven at trial. 705 ILCS 405/5-810 (West 2008).

¶ 34    In regard to respondent's claim that the trial court erred in designating the case as an EJJ prosecution, there is also nothing in the record demonstrating that the trial court abused its discretion in its evaluation or that the judge failed to consider all of the factors enumerated in section 5-810. See *Dontrale E.*, 358 Ill. App. 3d at 140-41. The record shows that the judge considered respondent's age, his criminal history, his mental health history, his history of physical abuse or neglect, the circumstances of respondent's offense, the advantages to treatment within the juvenile justice system, and the security of the public. The trial court specifically discusses each of the factors:

"[The] previous delinquent or criminal history of the [respondent] is non-existent, and I'm required by statute to give greater weight to this factor ***; The minor has no previous or current mental health history ***; The education history includes being enrolled in special education classes for a highly structured class with individualized assistance ***; Although the family life has been chaotic, he has not been subject to physical abuse or neglect ***; I believe that there are many advantages to treatment within the juvenile justice system *** the factor is less important because if the minor is found guilty he would have the benefit of programs within the juvenile justice system and would receive an adult sentence only if he failed his juvenile sentence ***; Does the security of the public require that an adult sentence be imposed? There are three subfactors to consider in answering this question ***."

Many of the arguments that respondent now presents in his appeal regarding the factors concerning the age of the minor and respondent's criminal, family, and education history were already presented to the juvenile judge during the EJJ prosecution hearing. The judge had thoroughly considered these statutory factors.

¶ 35 In its discussion of the minor's offense, the judge noted how the crime was "extremely serious." Even though the aluminum bat was not a deadly weapon, the trial court stated that respondent and his co-offenders used their fists, their feet, a broken aluminum bat, and concrete chunks to kill the factory worker victim. The court noted that the offense was committed in an "aggressive and premeditated manner," that there was an "absolute lack of any personal animus or motivation towards the deceased," and that "[t]he minor is alleged to have, personally used his feet, fist, and most chillingly to have left and returned with a broken bat that he repeatedly struck the victim with." In considering all the factors and giving greater weight to the lack of criminal history and the seriousness of the offense, the trial court determined that there was no clear and convincing evidence that an adult sentence would not be appropriate for this respondent.

¶ 36 The record does not give any indication that the judge neglected to evaluate any of the above factors, nor does the record show that the judge abused its discretion in its evaluation of the above factors listed in section 5-810. *Dontrale E.*, 358 Ill. App. 3d at 140. In an analogous case interpreting the juvenile transfer statute, our Illinois Supreme Court found that the transfer hearing was inadequate because the juvenile judge did not consider all of the factors necessitated under the transfer statute. *People v. Clark*, 119 Ill. 2d 1, 14 (1987). See also *In re J.W.*, 346 Ill. App. 3d 1, 17 (2004). In the case at bar, there is no evidence that the trial court failed to consider all of the enumerated factors under section 5-810. *Dontrale E.*, 358 Ill. App. 3d at 140-41; *J.W.*, 346 Ill. App. 3d 17. We find that there was no error in the trial court. The standard of review for an EJJ prosecution designation is abuse of discretion and " '[w]here the juvenile judge considers evidence on the various statutory factors *** the resulting decision is a product of sound judicial discretion which will not be disturbed on review.' " *Dontrale E.*, 358 Ill. App. 3d at 141 (quoting *Clark*, 119 Ill. 2d at 14); see also *J.W.*, 346 Ill. App. 3d at 17. The record does not demonstrate that the trial court abused its discretion in its evaluation of enumerated factors and supports the juvenile court's designation of the case as an EJJ prosecution. Thus, the plain-error doctrine is not applicable because no error occurred.

¶ 37    Furthermore, even if we find error in the trial court's actions, the claimed error does not rise to the level of plain-error. As stated above, the plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the respondent, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error was so serious that it affected the fairness of the respondent's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *Piatkowski*, 225 Ill. 2d at 565; *People v. Woods*, 214 Ill. 2d 455, 471 (2005).

¶ 38    First, the claimed error affected only one of the factors listed in the EJJ prosecution statute, the seriousness of respondent's offense, and the evidence on this factor was not closely balanced. Even if the State had not introduced respondent's alleged use of an aluminum bat, his involvement with the Latin Kings, or his motive for murder, the remaining evidence is sufficient to designate the case an EJJ prosecution. Respondent's use of his fists and feet to kill the factory worker victim is still extremely serious and chilling. Respondent's offense is also equally serious and chilling regardless of whether his motive was gang-related and retaliatory, or whether he had no apparent motive. In addition, the State did present two eyewitnesses at trial that testified that respondent participated in the murder. For these reasons, we find that the evidence on the issue of the seriousness of respondent's offense was not closely balanced. Therefore, the claimed error did not rise to the level of plain-error under the first prong of the plain-error doctrine.

¶ 39    Second, the claimed error did not affect the fairness of the respondent's trial or challenge the integrity of the judicial process. *Piatkowski*, 225 Ill. 2d at 565; *Woods*, 214 Ill. 2d at 471. Our supreme court has "equated the second prong of plain-error review with structural error, asserting that automatic reversal is only required where an error is deemed structural, *i.e.*, a systemic error which serves to erode the integrity of the judicial process and undermine the fairness of the respondent's trial." (Internal quotation marks omitted.) *People v. Thompson*, 238 Ill. 2d 598, 613-14 (2010) (quoting *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009)). In *Thompson*, our supreme court explained that "[a] finding that respondent was tried by a biased jury would certainly satisfy the second prong of plain-error review." *Thompson*, 238 Ill. 2d at 614 (holding that respondent did not satisfy the second prong of plain-error review because he did not present any evidence that the jury was biased). The court recently stated that "[t]he category of structural errors is very limited," including "the complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of the right of self-representation at trial, denial of a public trial, and defective reasonable doubt instructions." *People v. Washington*, 2012 IL 110283, ¶ 59 (citing *Neder v. United States*, 527 U.S. 1, 8-9 (1999)). In the case at bar, the claimed error did not rise to the level of the examples listed in *Thompson* and *Washington* and did not affect the fairness of respondent's trial. *Thompson*, 238 Ill. 2d at 614; *Washington*, 2012 IL 110283, ¶ 59. Therefore, the claimed error did not rise to the level of plain error under the second prong of plain-error review.

¶ 40    Thus, even if we find that the court erred in assessing respondent's alleged use of an aluminum bat, his involvement with the Latin Kings, or his motive for murder, the plain-error doctrine is not applicable because this neither tipped the scales of justice against the

-11-

respondent, nor did it affect the fairness of respondent's trial.

¶ 41                                    II. *Apprendi* Issue

¶ 42     Respondent raises two *Apprendi* claims. Respondent claims first that EJJ prosecution statute is an unconstitutional violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because it imposes a longer sentence than the maximum allowed under the Juvenile Court Act alone, and it does so based on a judge's probable cause determination rather than a jury finding beyond a reasonable doubt. Second, respondent argues that this court in prior cases wrongly held that *Apprendi* does not apply to the EJJ prosecution statute. *In re Matthew M.*, 335 Ill. App. 3d 276 (2002); *In re J.W.*, 346 Ill. App. 3d 1 (2004); *In re Christopher K.*, 348 Ill. App. 3d 130 (2004), *rev'd in part on other grounds*, 217 Ill. 2d 348 (2005).

¶ 43     We find that the EJJ prosecution statute is constitutional and does not violate *Apprendi* for the reasons below.

¶ 44                                    A. Standard of Review

¶ 45     A respondent "may challenge the constitutionality of a statute at any time." *People v. Wagener*, 196 Ill. 2d 269, 279 (2001). The constitutionality of a statute is "a pure question of law," and thus, our standard of review is *de novo*. *People v. Jones*, 223 Ill. 2d 569, 596 (2006). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 46                             B. Relevant Portions of the Statute

¶ 47     A proceeding is designated as an EJJ prosecution when a judge decides on the basis of probable cause that a juvenile at least 13 years old committed an offense "which would be a felony if committed by an adult." 705 ILCS 405/5-810(1)(a) (West 2008). The information presented to the judge may be by way of proffer. 705 ILCS 405/5-810(2) (West 2008). The minor may rebut the presumptive EJJ prosecution designation with clear and convincing evidence that EJJ prosecution is not appropriate in this case. 705 ILCS 405/5-810(1)(b) (West 2008). There is a list of factors for the trial court to consider when ruling whether an EJJ prosecution designation is appropriate. 705 ILCS 405/5-810(1)(b) (West 2008). The factors are:

"(i) the age of the minor;

(ii) the history of the minor, including:

(A) any previous delinquent or criminal history of the minor,

(B) any previous abuse or neglect history of the minor, and

(C) any mental health, physical and/or educational history of the minor;

(iii) the circumstances of the offense, including:

(A) the seriousness of the offense,

(B) whether the minor is charged through accountability,

(C) whether there is evidence the offense was committed in an aggressive and

-12-

premeditated manner,

>        (D) whether there is evidence the offense caused serious bodily harm,

>        (E) whether there is evidence the minor possessed a deadly weapon;

>    (iv) the advantages of treatment within the juvenile system including whether there are facilities or programs, or both, particularly available in the juvenile system;

>    (v) whether the security of the public requires sentencing under Chapter V of the Unified Code of Corrections:

>        (A) the minor's history of services, including the minor's willingness to participate meaningfully in available services;

>        (B) whether there is a reasonable likelihood that the minor can be rehabilitated before the expiration of the juvenile court's jurisdiction;

>        (C) the adequacy of the punishment services." 705 ILCS 405/5-810(1)(b) (West 2008).

The most important factors are the juvenile's criminal history and the seriousness of the offense. 705 ILCS 405/5-810(1)(b) (West 2008). If a juvenile receives an EJJ prosecution designation and if a jury later finds that respondent guilty, the EJJ prosecution statute then requires a judge to impose two sentences: a juvenile sentence; and an adult criminal sentence that is stayed on successful completion of the terms of the juvenile sentence. 705 ILCS 405/5-810(4) (West 2008).

¶ 48                                C. *Apprendi*

¶ 49    Respondent's first argument is that the EJJ prosecution statute violates *Apprendi*.

¶ 50    The United States Supreme Court in *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury [or trier of fact], and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In *Apprendi*, a New Jersey law allowed a judge to extend the defendant's sentence for unlawful possession of a firearm, two years beyond the 10-year maximum for that crime. *Apprendi*, 530 U.S. at 469-71. The extension was based on the judge's finding by a preponderance of the evidence that the defendant wanted to intimidate an African-American family that had moved into a previously all-white neighborhood. *Apprendi*, 530 U.S. at 471. The Court found that the law was unconstitutional because it "expose[d] the criminal defendant to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone." (Emphasis in original.) *Apprendi*, 530 U.S. at 483.

¶ 51    In *Blakely v. Washington*, 542 U.S. 296 (2004), the Court applied *Apprendi* to the state of Washington's sentencing guidelines. It explained that the " 'statutory maximum' " is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (Emphasis omitted.) *Blakely*, 542 U.S. at 303. In *Blakely*, the trial judge extended the defendant's sentence for kidnapping beyond the statutory guideline for the crime because the judge found "substantial and compelling" evidence of cruelty. (Internal quotation marks omitted.) *Blakely*, 542 U.S. at 299. The

exceptional sentence was still below the maximum sentence allowed by the state statute. *Blakely*, 542 U.S. at 299. Nevertheless, the Court held that the exceptional sentence violated *Apprendi*. *Blakely*, 542 U.S. at 305.

¶ 52                              D. Illinois Appellate Cases

¶ 53     After *Apprendi* but before *Blakely*, this court held that *Apprendi* applies only to adjudicatory proceedings, and that EJJ prosecutions are not adjudicatory, but dispositional. *In re Matthew M.*, 335 Ill. App. 3d 276, 288 (2002) (citing *People v. Beltran*, 327 Ill. App. 3d 685, 690 (2002)); *In re J.W.*, 346 Ill. App. 3d 1, 11 (2004). Thus, the appellate court found that *Apprendi* did not apply to the EJJ prosecution statute. *Matthew M.*, 335 Ill. App. 3d at 289; *J.W.*, 346 Ill. App. 3d at 11.

¶ 54     In *Matthew M.*, the first of these cases, the respondent was prosecuted and sentenced under the EJJ prosecution statute for a residential burglary. *Matthew M.*, 335 Ill. App. 3d at 278. The appellate court held that the EJJ prosecution statute did not violate *Apprendi* because an EJJ prosecution is dispositional, not adjudicatory. *Matthew M.*, 335 Ill. App. 3d at 290. The appellate court stated that EJJ prosecution " 'determines not the minor's guilt but the forum in which his guilt may be adjudicated.' " *Matthew M.*, 335 Ill. App. 3d at 288 (quoting *Beltran*, 327 Ill. App. 3d at 690). While adjudicatory hearings in juvenile court demand the due process requirement of proof beyond a reasonable doubt, dispositional hearings do not. Therefore, the appellate court held that *Apprendi* does not apply to the EJJ prosecution statute. *Matthew M.*, 335 Ill. App. 3d at 289.

¶ 55     Again, in *J.W.*, this court held that "*Apprendi* is not applicable" to the EJJ prosecution statute. *J.W.*, 346 Ill. App. 3d at 11. In *J.W.*, the respondent was prosecuted for first-degree murder under the EJJ prosecution statute because of the particularly violent nature of her crime. *J.W.*, 346 Ill. App. 3d at 3. We explained that "a juvenile does not have a constitutional right to a juvenile adjudication and juvenile sentence in lieu of a criminal prosecution and adult sentence." *J.W.*, 346 Ill. App. 3d at 11 (citing *People v. P.H.*, 145 Ill. 2d 209, 223 (1991)).

¶ 56            E. *Apprendi* Does Not Apply to the EJJ Prosecution Statute

¶ 57     Respondent argues that these prior Illinois cases were wrongly decided because they were decided before *Blakely* and because an EJJ prosecution is not purely dispositional. Respondent claims that since the juvenile court retains jurisdiction but imposes an adult sentence, EJJ prosecution does not simply transfer a respondent from juvenile to adult court. Rather, respondent argues that the EJJ prosecution statute violates *Apprendi* because a judge can, in effect, extend the juvenile's sentence based on facts not found by the fact finder. We do not find respondent's argument persuasive for the following reasons.

¶ 58     Though these cases were decided before *Blakely*, *Blakely* does not affect the validity of their holdings. First, unlike the statute in *Blakely*, the EJJ prosecution statute does not involve a sentencing guideline. Second, since *Blakely* explains *how* to apply *Apprendi*, it does not affect our ruling that *Apprendi* does not apply at all.

-14-

¶ 59 We adhere to our precedent that *Apprendi* does not apply to the EJJ prosecution statute. The EJJ prosecution statute decides which forum will hear a respondent's case; it does not determine a respondent's guilt or the specific sentence. Respondent distinguishes between the EJJ prosecution statute and the transfer of jurisdiction statute (705 ILCS 405/5-805 (West 2008)), and calls the EJJ prosecution statute a "hybrid." While it is true that the EJJ prosecution statute does not wholly transfer a respondent to adult criminal court and that a respondent receives a juvenile sentence, these differences do not affect the dispositional nature of the statute.

¶ 60 As a dispositional, not adjudicatory statute, the EJJ prosecution statute cannot violate *Apprendi* because *Apprendi* simply does not apply.

¶ 61 F. Even if *Apprendi* Did Apply, the EJJ
Prosecution Statute is Constitutional

¶ 62 Even if *Apprendi* did apply, the EJJ prosecution statute is still constitutional. Respondent's second argument focuses on the language in *Apprendi* that "the relevant inquiry is one not of form, but of effect–does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi*, 530 U.S. at 494. Respondent argues that the effect of EJJ prosecution designation is to expose a respondent to the longer adult sentence based on information found by the judge on the basis of only probable cause–a violation of *Apprendi*. Respondent claims that the EJJ prosecution statute violates *Blakely* because the adult sentence is longer than the maximum sentence allowed under the juvenile system.

¶ 63 However, the statutory maximum for *Apprendi* purposes is not the maximum punishment allowed in the juvenile system. A juvenile court hearing is not a matter of right. *J.W.*, 346 Ill. App. 3d at 11 (citing *P.H.*, 145 Ill. 2d at 223). "[T]he juvenile system is a purely statutory creation and *** the legislature has the authority to define the limits of the juvenile system." *Matthew M.*, 335 Ill. App. 3d at 289 (citing *P.H.*, 145 Ill. 2d at 223). In this case, the legislature is free to determine that, under certain circumstances, it is best to submit the case to an adult criminal procedure. The criminal court, not the juvenile court, is the norm. The statutory maximum is the maximum sentence allowed by the offense committed, not by the Juvenile Court Act.

¶ 64 In this case, a jury found every element required for the statutory sentence beyond a reasonable doubt. The sentence was within the statutory range of 20 to 60 years for first-degree murder. In *J.W.*, we distinguished the EJJ prosecution statute from the statute in *Apprendi* and stated that the EJJ prosecution statute does not violate *Apprendi* because "the EJJ [prosecution] determination does not increase the allowable penalty for murder based upon a judge's independent finding with regard to additional elements of the crime." *J.W.*, 346 Ill. App. 3d at 11. EJJ prosecution sentencing thus complies with both *Apprendi* and *Blakely*.

¶ 65 In sum, *Apprendi* does not apply to the EJJ prosecution statute, and even if *Apprendi* did apply, EJJ prosecution does not violate it.

¶ 66                                          III. Vagueness

¶ 67        In respondent's brief to this court, he claims that the EJJ prosecution statute is vague and
thus unconstitutional under the due process clauses of both the Illinois and United States
Constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. Respondent claims that
the EJJ prosecution statute is facially vague on two grounds: (1) the language does not
properly notify a respondent about which acts will trigger revocation of the stay on his adult
sentence; and (2) the language does not provide a judge or law enforcement officer with
sufficient guidance to prevent arbitrary and discriminatory law enforcement. In addition,
respondent claims that the EJJ prosecution statute is unconstitutionally vague as applied to
him because the trial court failed to specify any particular conditions or offenses that, if
committed, would revoke the stay on respondent's adult sentence. We find that respondent's
arguments are not persuasive for the following reasons.

¶ 68        The constitutionality of a statute is a question of law and, therefore, our standard of
review is *de novo*. *People v. Einoder*, 209 Ill. 2d 443, 450 (2004). "Statutes are presumed to
be constitutional, and the party challenging the validity of the statute has the burden to clearly
establish the constitutional invalidity." *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 290
(2003).

¶ 69        No citation of authority was cited by respondent in his brief before this court that
analyzed whether the EJJ prosecution statute is vague. The cases cited did not perform a
vagueness analysis or were not on point. This court has repeatedly held that a party waives
a point by failing to cite authorities. *Lozman v. Putnam*, 379 Ill. App. 3d 807, 824 (2008);
*People v. Ward*, 215 Ill. 2d 317, 332 (2005) ("point raised in a brief but not supported by
citation to relevant authority *** is therefore forefeited"). See Ill. S. Ct. R. 341(h)(7) (eff.
July 1, 2008). Notwithstanding respondent's waiver, we will analyze respondent's
substantive arguments.


¶ 70                                          A. Standing

¶ 71        Before we analyze respondent's substantive claim, we must first address the State's
argument that respondent lacks standing in this appeal. The State argues that respondent does
not have standing because his adult sentence has not yet been imposed. The State cites two
cases from this court in support of its argument. *In re J.W.*, 346 Ill. App. 3d 1 (2004); *In re
M.I.*, 2011 IL App (1st) 100865.[1] In both cases, the Fifth Division of the First District held
that a respondent lacked standing to challenge the EJJ prosecution statute for vagueness
before an adult sentence was imposed. *J.W.*, 346 Ill. App. 3d at 14-15; *In re M.I.*, 2011 IL
App (1st) 100865, ¶¶ 54-61. The State argues that the potential revocation of respondent's
stayed adult sentence has not caused any present injury. For reasons that we explain below,
we do not find these cases persuasive.

¶ 72        The purpose of standing is to ensure that courts are deciding actual, specific controversies

_____

        [1] Our supreme court granted a petition for leave to appeal in *In re M.I.* and it is currently
pending in that court. *In re M.I.*, No. 113776 (Ill. Mar. 28, 2012).

and not abstract or moot issues. *Borsellino v. Putnam*, 2011 IL App (1st) 102242, ¶ 90. "To have standing to challenge the constitutionality of a statute, a person must have suffered or be in immediate danger of suffering a direct injury as a result of enforcement of the challenged statute." *People v. Greco*, 204 Ill. 2d 400, 409 (2003). For a plaintiff to have standing, his or her claimed injury: (1) must be fairly traceable to a respondent's actions; (2) must be substantially likely to be prevented or redressed by the grant of the requested relief; and (3) must consist of a distinct and palpable injury. *Burnette v. Stroger*, 389 Ill. App. 3d 321, 331 (2009).

¶ 73     In the case at bar, first, the claimed injury is directly traceable to the State's imposition of an adult sentence under the EJJ prosecution. Second, the claimed injury would be redressed if either we found the statute facially unconstitutional or if we remanded the case for further clarification.

¶ 74     Third, respondent's claimed injury here is both distinct and palpable because, if the statute is unconstitutionally vague, respondent will live in fear that he may unknowingly revoke the stay through his conduct, and thus cause the court to impose his 20-year adult sentence. Our supreme court has instructed us that a respondent has standing to challenge the State's prospective right to apply a statute where the respondent "is in immediate danger of sustaining harm by enforcement of the allegedly unconstitutional provision." *People v. P.H.*, 145 Ill. 2d 209, 220 (1991). In *P.H.*, 145 Ill. 2d at 217-18, the State appealed a dismissal of its motion to permit a prosecution under criminal law pursuant to the " 'gang-transfer' " statute, which requires prosecution of a minor under criminal laws if the statute's conditions are met. The trial court found the " 'gang-transfer' " statute unconstitutional, and on appeal the State argued that the respondent lacked standing to challenge the statute because it had not yet been enforced. *P.H.*, 145 Ill. 2d at 217, 219-20. Our supreme court held that respondent had standing "even absent a transfer, trial, or sentencing" because he was in immediate danger of sustaining harm. *P.H.*, 145 Ill. 2d at 220. Like the minor in *P.H.*, 145 Ill. 2d at 220, respondent is also "in immediate danger of sustaining harm by enforcement of the allegedly unconstitutional provision" even though his adult sentence has not yet been triggered. See also *People v. Greco*, 204 Ill. 2d 400, 409 (2003) (finding standing where respondent was "in danger of being subjected to" an inference that was statutorily permitted).

¶ 75     In addition, the reason for finding standing is comparable to the reason for providing statutes of repose. "Repose" means "relief from excitement, danger, or difficulty." Webster's Third New International Dictionary 1926 (1993). Statutes of repose ensure defendants' peace of mind by enabling respondents "to predict future liabilities and alleviate their need to maintain loss reserves." (Internal quotation marks omitted.) *Fricka v. Bauer*, 309 Ill. App. 3d 82, 86 (1999). Similarly, in the case at bar, respondent lacks repose.

¶ 76     Furthermore, the case-by-case history in our jurisdiction is less settled than the State contends.

¶ 77     First, in *In re Christopher K.*, 348 Ill. App. 3d 130, 143-44 (2004), we did conduct a vagueness analysis of the EJJ prosecution statute despite the exact same standing challenge by the State. Our Illinois Supreme Court held that the respondent's claim was moot because the minor was "no longer subject to the adult sentence" after he turned 21. *In re Christopher*

*K.*, 217 Ill. 2d 348, 359 (2005). Since the court reversed on grounds unrelated to the standing challenge, we believe the court implied that a respondent does have standing to challenge the EJJ prosecution statute for vagueness before the adult sentence is imposed. *Christopher K.*, 217 Ill. 2d at 359. Second, the *M.I.* decision, relied on by the State, failed to consider our supreme court's decision in *P.H.*, discussed above, and the *M.I.* decision is currently pending before the Illinois Supreme Court. *In re M.I.*, 2011 IL App (1st) 100865, *appeal allowed*, No. 113776 (Ill. 2012).

¶ 78    It is worth noting that respondent is currently 19 and 3 months old and will likely be over 21 if this case reaches the Illinois Supreme Court. Thus, by that time, it will be moot. *Christopher K.*, 217 Ill. 2d at 359 (holding that the EJJ prosecution challenge became moot once the minor turned 21 because the court could not "grant any meaningful relief to the State or to respondent"). There is, however, a public interest mootness exception that would be applicable here, known as the public interest exception. In order to fall into the public interest exception, (1) the question must be of a public nature; (2) an authoritative determination of the question must be desirable for the purpose of guiding public officers; and (3) the question must be likely to recur. *American Service Insurance Co. v. City of Chicago*, 404 Ill. App. 3d 769, 781 (2010). The Illinois Supreme Court in *Christopher K.*, 217 Ill. 2d at 362, held that a vagueness challenge to the EJJ prosecution statute did not currently fall within the exception, in part, because only one appellate court decision had addressed a vagueness challenge at that time. Including the instant action, there have now been four appellate court decisions about the vagueness of the EJJ prosecution statute. Thus, we believe that the issue now satisfies the public interest mootness exception. See *In re J.W.*, 346 Ill. App. 3d 1 (2004); *In re Christopher K.*, 348 Ill. App. 3d 130 (2004); *In re M.I.*, 2011 IL App (1st) 100865.

¶ 79                                     B. Facially Vague

¶ 80    Respondent claims that the EJJ prosecution statute is unconstitutionally vague and thus void because: (1) it fails to define what conduct will revoke the stay on a respondent's adult sentence; and (2) it fails to provide adequate guidance to law enforcement and judicial authorities in applying the statute. The vagueness doctrine arises out of the due process clauses of the United States and Illinois Constitutions. "It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits...." (Internal quotation marks omitted.) *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (quoting *Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03 (1966)). See also U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2.

¶ 81    For a statute to be found not vague, it must provide people of ordinary intelligence with the opportunity to understand what conduct is prohibited, and it must provide a reasonable standard to law enforcement officials and to the judiciary to prevent arbitrary and discriminatory legal enforcement. *People v. Einoder*, 209 Ill. 2d 443, 450 (2004). However, "perfect clarity and precise guidance have never been required." (Internal quotation marks omitted.) *United States v. Williams*, 553 U.S. 285, 304 (2008) (quoting *Ward v. Rock Against*

*Racism*, 491 U.S. 781, 794 (1989)). We have typically shown greater tolerance for vagueness in civil, rather than criminal statutes. *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982).

¶ 82 Under the EJJ prosecution statute, a trial court "shall" impose both a juvenile sentence and an adult sentence. 705 ILCS 405/5-810(4)(i), (ii) (West 2008). The adult sentence is stayed, and the stay can be revoked if the minor "violate[s] the provisions of the juvenile sentence." 705 ILCS 405/5-810(4)(ii) (West 2008). The EJJ prosecution statute provides:

"When it appears that a minor convicted in an extended jurisdiction juvenile prosecution *** has violated the *conditions* of his or her sentence, or is alleged to have committed a new *offense* upon the filing of a petition to revoke the stay, the court may, without notice, issue a warrant for the arrest of the minor. After a hearing, if the court finds by a preponderance of the evidence that the minor committed a new offense, the court shall order execution of the previously imposed adult criminal sentence. After a hearing, if the court finds by a preponderance of the evidence that the minor committed a violation of his or her sentence other than by a new offense, the court may order execution of the previously imposed adult criminal sentence or may continue him or her on the existing juvenile sentence with or without modifying or enlarging the conditions." (Emphases added.) 705 ILCS 405/5-810(6) (West 2008).

¶ 83 Respondent first contends that the terms "conditions" and "offense," as used in the above-quoted statute, are unconstitutionally vague because they fail to make clear to a person of ordinary intelligence what type of conduct will trigger the adult sentence. *People v. Sharpe*, 216 Ill. 2d 481, 527 (2005) (stating that, in order to satisfy due process, "the statute's prohibitions [must be] sufficiently definite *** to give a person of ordinary intelligence fair warning as to what conduct is prohibited" (quoting *People v. Falbe*, 189 Ill. 2d 635, 640 (2000))). We find that respondents have adequate notice of the meaning of both terms as we explain below.

¶ 84 Contrary to respondent's claims, the term "conditions" is given in a context within the EJJ prosecution statute. It explicitly refers to those "conditions *of his or her sentence*." (Emphasis added.) 705 ILCS 405/5-810(6) (West 2008). Where the trial court orders provisions such as probation or drug counseling in addition to the juvenile detention term, those provisions of the juvenile sentence would be part of the EJJ prosecution "conditions." Where the trial court does not impose any additional provisions at sentencing, the term "conditions" refers only to the minor's completion of his or her sentence and the minor's adherence to the Illinois Department of Corrections (IDOC) rules and regulations during that time. Respondent raises a series of hypothetical scenarios in which the conditions of a sentence could be vague. However, we will not find a "statute *** unconstitutionally vague merely because one can imagine hypothetical situations in which the meaning of some terms might be called into question." *People v. Izzo*, 195 Ill. 2d 109, 113 (2001).

¶ 85 The term "offense" is equally plain and unambiguous, meaning "criminal offense." Respondent claims that it is unclear whether the word "offense" refers to any type of offense, or only to certain types of offenses such as felonies. Respondent also questions: (1) whether an "offense" is committed by a mere arrest, or if criminal proceedings must be brought; and

(2) whether "offense" includes only Illinois criminal offenses, or all state, federal, and even municipal offenses. The Criminal Code of 1961, however, defines "offense" as "a violation of any penal statute of this State." 720 ILCS 5/2-12 (West 2008). Thus, an "offense" means all international, federal, or state offenses that are considered criminal within the State of Illinois. Still, the respondent claims that there is no indication that the Criminal Code applies to the Juvenile Court Act or to the EJJ prosecution statute. This argument ignores the fact that the EJJ prosecution statute is, in essence, a criminal statute, applying only to criminal offenses. 705 ILCS 405/5-810(1)(a) (West 2008). Thus, definitions found in the Criminal Code are applicable.

¶ 86    Respondent also claims that a lack of maturity may magnify the effect of statutory vagueness for minors. A vagueness analysis could, arguably, be modified for statutes affecting only minors by interpreting the words "person of ordinary intelligence" as a "person, of defendant's age, of ordinary intelligence." This analysis would be comparable to the "reasonable person" standard in tort claims, which is modified for minors. However, "[i]n Illinois law there is a presumption that [only] a child between the ages of seven and fourteen is incapable of negligence." *Perricone v. DiBartolo*, 14 Ill. App. 3d 514, 517 (1973). Thus, even if we similarly modified all vagueness analyses based on the challenging party's age, this respondent was not between the ages of 7 and 14 at the time of the crime and so he would not benefit from a modified standard. In addition, although we find this argument interesting, respondent did not present any case precedent or authorities. This court has repeatedly held that a party waives a point by failing to cite relevant authorities. *Lozman v. Putnam*, 379 Ill. App. 3d 807, 824 (2008); *People v. Ward*, 215 Ill. 2d 317, 332 (2005) ("point raised in a brief but not supported by citation to relevant authority *** is *** forfeited"). See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008). Also, we cannot find any case precedent or authorities in our own research to support a different vagueness standard for juvenile statutes.

¶ 87    Respondent next claims that the terms of the EJJ prosecution statute are unclear such that they will induce arbitrary and discriminatory enforcement. To satisfy due process, a statute must "provide[ ] sufficiently definite standards for law enforcement officers and triers of fact that its application does not depend merely on their private conceptions." *People v. Wilson*, 214 Ill. 2d 394, 399 (2005).

¶ 88    First, respondent argues that the EJJ prosecution statute fails to guide judges where it states that "if the court finds by a preponderance of the evidence that the minor committed a violation of his or her sentence other than by a new offense, the court may order execution of the previously imposed adult criminal sentence or may continue him or her on the existing juvenile sentence with or without modifying or enlarging the conditions." 705 ILCS 405/5-810(6) (West 2008). Contrary to respondent's claim, the Juvenile Court Act's section on "Purpose and policy" provides guidance to trial court judges. 705 ILCS 405/1-2 (West 2008). "The purpose of this Act is to secure for each minor subject hereto such care and guidance *** as will serve the safety and moral, emotional, mental, and physical welfare of the minor and the best interests of the community ***." 705 ILCS 405/1-2 (West 2008). Furthermore, the Juvenile Court Act explicitly grants trial court judges discretion to affect these goals. 705 ILCS 405/1-2(4) (West 2008) ("This Act shall be liberally construed to carry out the

foregoing purpose and policy."). Juvenile courts historically have unique discretion, for example in assessing a waiver of *Miranda* rights. See *Fare v. Michael C.*, 442 U.S. 707, 721-25 (1979) ("There is no reason to assume that *** courts–especially juvenile courts, with their special expertise in this area–will be unable to apply [a] totality-of-the circumstances analysis so as to take into account *** special concerns ***."). We may still review for an abuse of discretion, namely, if the trial court's acts do not further the stated purposes of the act. "An abuse of discretion occurs when no reasonable person would take the view adopted by the court." *Trettenero v. Police Pension Fund*, 333 Ill. App. 3d 792, 801 (2002) (citing *In re Marriage of Blunda*, 299 Ill. App. 3d 855, 865 (1998)). However, in the case at bar we cannot say that the trial court abused its discretion, as we discussed in the first section of this analysis.

¶ 89    Second, respondent claims that the statute grants probation officers inappropriate discretion to determine whether the adult sentence is triggered. This argument ignores the fact that the EJJ prosecution statute requires a judicial hearing before the stay on the adult sentence can be revoked. 705 ILCS 405/5-810(6) (West 2008) ("After a hearing" the court may order execution of the adult sentence.). Therefore, a probation officer's discretion is appropriately checked by the judiciary.

¶ 90    As stated previously, precise statutory construction is not necessary. For example, in *People v. Dominguez*, 255 Ill. App. 3d 995, 998 (1994), a statute criminalizing offenses committed in a "brutal and heinous manner" satisfied due process. If adjectives such as "brutal" and "heinous" are not unconstitutionally vague, then the well-defined conditions and offenses challenged by respondent also satisfy due process requirements. Unlike the unconstitutionally vague statute in *Papachristou v. City of Jacksonville*, 405 U.S. 156, 161 (1972), that was "derived from early English law" and that employed "archaic language," the challenged terms at issue in the EJJ prosecution statute have been adequately defined as explained above. (Internal quotation marks omitted.) Similarly, unlike the vague statute in *People v. Maness*, 191 Ill. 2d 478, 484 (2000), that required a parent to take undefined " 'reasonable steps' " to prevent sexual abuse upon his or her child, the conditions that may trigger revocation of a stayed adult sentence are reasonably understood to mean those included in a judicial sentence as explained above.

¶ 91    Because the terms of the EJJ prosecution statute are plain and unambiguous, the statute satisfies due process requirements and is not unconstitutionally vague. *Vuagniaux v. Department of Professional Regulation*, 208 Ill. 2d 173, 192 (2003) ("[A] statute does not violate the due process clauses of the United States or Illinois Constitution on grounds of vagueness if it is explicit enough to serve as a guide to those who must comply with it." (citing *Ardt v. Illinois Department of Professional Regulation*, 154 Ill. 2d 138, 157 (1992))). A person of ordinary intelligence can understand what type of conduct is prohibited and the terms provide sufficient clarity and definiteness so as to prevent arbitrary and discriminatory conduct by law enforcement officers and the judiciary.

¶ 92                                    C. Vagueness "As Applied"

¶ 93    Respondent claims that the EJJ prosecution statute is unconstitutional as applied to him

because the trial judge provided inadequate instructions. At trial, the judge stated:

> "I will not attempt to explain to you when and how this [adult] sentence could kick in. Your lawyers will do that. But if you do not follow all of the rules and regulations, you could very well see yourself serving not only the time in the Juvenile Temporary Detention Center but also 20 years in adult prison."

Although the trial judge did not describe in detail the list of conditions or offenses that would trigger the adult sentence, as explained above the terms are plain and unambiguous and thus satisfy due process requirements.

¶ 94        The State counters that respondent forfeited an "as applied" challenge because there was no objection made in the trial court. Respondent responds, first, by arguing that the constitutionality of a criminal statute may be challenged at any time. Second, he argues that a challenge may be raised under the plain-error doctrine. The plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the respondent, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Land*, 2011 IL App (1st) 101048, ¶ 94 (citing *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)).

¶ 95        Our supreme court has instructed us that the constitutionality of a statute may be challenged at any time. *People v. McCarty*, 223 Ill. 2d 109, 123 (2006) (allowing a constitutional challenge where the appellant did not file a posttrial motion and did not raise a constitutional challenge in his petition for leave to appeal); see also *In re. J.W.*, 204 Ill. 2d 50, 61 (2003) ("[I]n general, a constitutional challenge to a criminal statute can be raised at any time."); *People v. Wright*, 194 Ill. 2d 1, 24 (2000) ("[I]f, as defendant argues, [the statute] is unconstitutional, it would be fundamentally unfair to uphold his convictions."). Therefore, we will consider respondent's constitutional challenge of the EJJ prosecution statute without considering respondent's plain error doctrine claim.

¶ 96        Respondent, however, may be prohibited from raising an "as applied" challenge for a different reason. Our Illinois Supreme Court has instructed that, under the doctrine of invited error, a party may not request to proceed in one manner and then later contend on appeal that the course of action was in error. *Torres v. Midwest Development Co.*, 383 Ill. App. 3d 20, 31 (2008) (citing *People v. Harvey*, 211 Ill. 2d 368, 385 (2004)). The doctrine of invited error " 'goes beyond mere waiver' [citation]" and "Illinois courts sometimes refer to the issue as one of estoppel." *People v. Harvey*, 211 Ill. 2d 368, 385 (2004). The minor's representative, at the trial court, proposed the exact sentence that respondent now challenges. This is evident where the minor's representative, at sentencing, stated, "I'm just referring to the sentencing order. It was drafted by our supervisor ***." Therefore, the "as applied" challenge is not persuasive.

¶ 97        However, even if we analyze the vagueness of the EJJ prosecution statute as applied to respondent, we find that the statute satisfied due process for the same reasons that the statute is not vague on its face. The terms "conditions" and "offense" are plain and unambiguous

terms and thus the judge's instruction was not unconstitutionally vague. In the instant action, the trial court did not impose any additional conditions, either in his juvenile sentence or in the mittimus. Therefore, if respondent successfully completes his juvenile detention term and if he complies with the rules and regulations provided to him by the IDOC, then he will have satisfied all the conditions associated with his sentence. The word "conditions" is thus clear and concrete in respondent's case. Furthermore, as stated previously, the term "offense" means any criminal offense and thus is equally clear and concrete.

¶ 98　　In sum, respondent has standing to challenge the constitutionality of the EJJ prosecution statute because the claimed injury is traceable to respondent's actions, is likely to be prevented or redressed by the grant of the requested relief, and is a distinct and palpable injury. The EJJ prosecution statute satisfies due process because it provides people of ordinary intelligence with the opportunity to understand what conduct is prohibited, and it provides a reasonable standard to law enforcement officials and to the judiciary to prevent arbitrary and discriminatory legal enforcement. Finally, the "as applied" challenge fails under the invited error doctrine because respondent introduced the challenged sentence.

¶ 99　　　　　　　　　　　　　　　CONCLUSION

¶ 100　　For the foregoing reasons, we affirm. First, we find that the trial court did not err in designating respondent's proceeding as an EJJ prosecution. Second, we hold that the EJJ prosecution statute does not violate the principles set forth by the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004). Third, we hold that the EJJ prosecution statute is not unconstitutionally vague, either on its face or as applied to respondent. Thus, we affirm respondent's conviction and sentence.

¶ 101　　Affirmed.